(74 South. 990)

No. 22163.

WOODS v. LONGVILLE LUMBER CO. et al.

(March 12, 1917. Rehearing Denied April 16. 1917.)

*(Syllabus by the Court.)*

1. NEGLIGENCE ⬤=83—LAST CLEAR CHANCE—APPLICATION OF DOCTRINE.

The doctrine of the last clear chance has no application to a case in which the negligence of the injured party continued until the moment of the accident and was the proximate cause of it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115.]

2. RAILROADS ⬤=376(1)—ACCIDENT ON TRACK—NEGLIGENCE.

The law recognizes that locomotive engineers are human beings, and does not exact of them that their brains and muscles shall act instantaneously in an emergency. A railroad company's responsibility for an accident to a person on its track depends, not upon whether the engineer did all that might possibly have been done to avoid the accident, but upon whether he used the appliances at his command with the promptness expected of a prudent and skillful man in his situation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1275, 1278.]

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Suit by Mrs. R. L. Woods, individually and as tutrix of her minor child, against the Longville Lumber Company and others. Judgment for defendants, and plaintiff individually and as tutrix appeals. Affirmed.

Gayle & Porter, of Lake Charles, for appellant. Pujo & Williamson, of Lake Charles, for appellees.

O'NIELL, J. The plaintiff appeals from a judgment rejecting her demand for damages for the death of R. L. Woods, husband of the plaintiff and father of her minor child. The suit is for the use and benefit of the child as well as on behalf of the widow individually.

R. L. Woods was run over and killed by a locomotive tender operated by the defendant Longville Lumber Company, on the railroad track of the defendant Louisiana & Pacific Railway Company. The defendants were engaged in certain logging operations, and it appears that Woods was employed by both companies as a car repairer at the time of the accident.

While Woods was engaged at his work at a repair switch near the main line of railroad, he was instructed by his superior, the trainmaster, to go and show the crew of an approaching train, called No. 99, where to place a barrel of oil on the switch. Picking up a hammer and two wrenches, Woods ran to the main line and hailed the train, which was backing up at a rate of about 3 or 4 miles an hour. He then walked along the side of the track, in the direction in which the train was traveling, until it passed him, when he went upon the track and followed the train. At that time another locomotive, known as No. 98, was following on the main line, traveling backward and shoving its tender ahead at a rate of about 4 miles an hour and at a distance of 100 yards or perhaps 200 yards behind engine No. 99. The engineer on No. 98 had shut off steam, and the engine was making very little noise. The bell was not ringing, and there was no lookout on the tender of No. 98. The view of the engineer and fireman from their positions in the cab was obstructed by the tender, so that they could not see an object on the track within a distance of 180 or 200 feet in front of the tender, in the direction in which they were traveling.

The day was clear, the track was straight, and there was nothing to obstruct the view of the approaching train from the position of Woods.

A man named Gainey, a brother of the fireman on engine No. 99, but not an employé of either of the defendants, was riding in the cab of that engine, and, looking back,

saw Woods walking down the middle of the track at a distance of about 50 feet behind the engine and about 150 or 200 feet in front of the tender of engine No. 98. These positions are stated with reference to the direction in which Woods and the two trains were traveling, and not with regard to what is ordinarily termed the front end or the rear end of a train or locomotive. Gainey had no reason to fear that Woods was not aware that engine No. 98 was approaching, and, seeing nothing alarming in the situation, turned his attention elsewhere without telling the engineer or fireman on engine No. 99 that Woods was on the track. A minute or perhaps a few minutes later Gainey again looked back in the direction of Woods, and at that instant the tender of engine No. 98 struck Woods in the back and knocked him down. Gainey immediately signaled or flagged engine No. 98 to stop. The fireman on No. 98 caught the signal instantly and told his engineer to stop. At the same moment the engineer on No. 99, attracted by Gainey's shouting and waving to engine No. 98, looked back and saw Woods attempting to rise from the ground. The foot board on the tender of No. 98 again struck him, rolled him over once or twice, and passed over him. The engineer immediately applied the emergency brake and stopped No. 98.

Woods was found under the tender and near the rear end of it; that is, near the end that had not passed over him. One of the brake beams of the tender was resting on his neck, and his neck was broken. The brake beam under the end of the tender that had passed over him was also so near the ground as to have injured him seriously if not fatally; hence it was impossible to know precisely how and when he received the fatal injury. His heart stopped beating ten minutes after he was removed from under the tender.

The learned counsel for the plaintiff admit that Woods was guilty of negligence in going upon the railroad track without observing that engine No. 98 was approaching; and they admit that his negligence, in walking along the track with his back towards the approaching train and without looking back at any time to avoid the danger continued until Woods was struck and knocked down. Their contention is that, with ordinary care and promptness, the engineer on the locomotive No. 98 could have avoided the killing after the tender had struck Woods and the engineer was informed of the perilous situation. The plaintiff's case therefore depends entirely upon the humane doctrine of the last clear chance.

One witness testified that immediately after the accident the fireman of engine No. 98 admitted that he saw Woods go upon the track and thought the latter had gone across to the other side of the track. The fireman denied having made that statement, and several other witnesses who were present at the time the statement is supposed to have been made testified that they did not hear it. In our opinion, whether the fireman on No. 98 did or did not see Woods go upon the track is of no importance, especially if, seeing Woods go upon the track, the fireman thought he had gone entirely across the track.

[1, 2] In support of the contention that the engineer on No. 98 had the last clear chance to save the life of Woods after knocking him down, the plaintiff's counsel rely upon the following circumstances to show that the engineer did not stop his engine as quickly as he should have stopped it after learning of the perilous situation: When the tender first struck Woods in the back, the hammer he was carrying fell beside the locomotive, and the engineer saw it. When Woods had fallen to the ground and was being rolled over by the foot board of the tender, he screamed, and the engineer heard him. The danger signal from Gainey to the fireman on

engine No. 98, the latter's telling the engineer to stop, the falling of the hammer beside the locomotive, and the screaming from in front of or under the tender came to the engineer on engine No. 98 in such quick succession as to be almost instantaneous. He put on the emergency brake immediately and stopped his engine within a distance of 8 feet from where it was when the brake took effect. The distance his engine traveled from the instant the engineer received the warning of danger to the moment the engine stopped was stated by the defendants' witnesses, and found by the district judge, to be 20 or 30 feet. The plaintiff's counsel contend that the distance was 30 or 40 feet. These figures are mere guesses—they can hardly be considered estimates—based upon observations made by the witnesses in moments of such excitement as to be utterly unreliable for accuracy. All that we know, and all that the witnesses could possibly know, in that respect, is that, if the engine was traveling at the rate of 4 miles an hour, it moved nearly 6 feet in every second; that it required some time, not more than a few seconds, but nevertheless some time, for the engineer to realize the situation and apply the brakes. During those few seconds Woods was being rolled over by the foot board and mangled under the brake beams of the tender. No one knows how many seconds or what fractional part of a second elapsed from the time that Woods screamed to the instant he received the fatal injury, nor is it within our province or power to fix a measure or standard of responsibility by the number of seconds in which a locomotive engineer can or should realize a situation of danger and apply the emergency brake. The law recognizes that locomotive engineers are human beings, and it does not exact of them that their brains and muscles shall act instantaneously in an emergency. The railroad company's responsibility depends not upon whether the engineer did all that might possibly have been done to avoid the accident, but upon whether he used the appliances at his command with the promptness expected of a prudent and skillful man in that situation.

The doctrine of the last clear chance has no application to a case in which the negligence of the injured party continued until the moment of the accident and was the proximate cause of it. The negligence of Woods, in remaining on the railroad track without observing the approaching train, continued until the tender of the locomotive struck him. During the few seconds when he was being rolled over by the footboard and mangled under the brake beams of the tender of the locomotive the defendants' employés had no chance whatever to save him.

Whether it was negligence on the part of the employés of the defendant company to run the engine backward, tender foremost, without some one on the tender to act as a lookout, and without ringing the bell, is of no importance in this case, because the negligence of Woods in walking on the track without observing the approaching engine was the proximate cause of his injury and death.

The judgment appealed from is affirmed at the cost of the appellant.

SOMMERVILLE, J., concurs.