CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY *v.* BAKER.

[No. 23,405. Filed November 30, 1920. Rehearing denied June
21, 1921.]

1. APPEAL.—*Review.*—*Weight of Evidence.*—The court on ap-
peal cannot weigh conflicting evidence. p. 637.
2. NEW TRIAL.—*Grounds.*—*Insufficiency of Evidence.*—*Duty of
Trial Court.*—In passing upon a motion for a new trial chal-
lenging the sufficiency of the evidence to sustain the verdict,
it is the duty of the trial court to consider and weigh the evi-
dence in view of the same considerations as control the jury
in determining the credibility of witnesses and the weight of
the evidence, and if, after such consideration, the court is
convinced that the jury has erred in its conclusion as to a
controverted fact which is essential to sustain the verdict, a
new trial should be granted, and the court should not shrink
from this duty because an erroneous finding as to a contro-
verted fact cannot be corrected on appeal. p. 638.

3. RAILROADS.—*Negligence.*—*Violation of Municipal Ordinances.*—Backing a locomotive across a street crossing without ringing the bell and without having a man stationed on the rear end of the tender, as required by city ordinances, constitute negligence as a matter of law. p. 638.

4. RAILROAD.—*Crossing Accidents.*—*Contributory Negligence.*—*Intervening Negligence.*—In an action against a railroad company for personal injuries sustained by plaintiff as a result of a collision on a street crossing between his automobile and defendant's locomotive, plaintiff's contributory negligence in going upon the crossing does not defeat recovery by him, where he relies on negligence of railroad employes intervening between his negligence and the injuries. p. 638.

5. APPEAL.—*Review.*—*Evidence.*—*Sufficiency.*—*Answers in Interrogatories.*—*Conclusiveness.*—Where a jury, by answer to special interrogatories, has decided a controverted fact on which there is conflict of evidence, the answer will be taken as true if there is evidence to support it, and the fact so established will be accepted as true by the court on appeal and considered by it in connection with the evidence bearing on material facts in determining whether the verdict is supported by sufficient evidence. p. 639.

6. NEGLIGENCE.—*Contributory Negligence.*—*Questions of Fact.*—What a person of ordinary prudence would do under a given state of conditions and circumstances and in view of the danger to be anticipated is a question of fact, unless all the circumstances and facts bearing on the question are undisputed, and they give rise to a single inference or conclusion concerning which all reasonable minds would agree. p. 640.

7. RAILROADS.—*Crossing Accidents.*—*Contributory Negligence.*—*Jury Questions.*—It cannot be stated as a general proposition of law that ordinary care requires a traveler on a highway to stop before entering on the track of a railroad company, nor can it be so stated that ordinary care does not require that precaution, but whether such precaution is or is not required depends on the circumstances of the particular case, and generally the question is one of fact, not of law. p. 640.

8. RAILROADS.—*Crossing Accidents.*—*Personal Injuries.*—*Contributory Negligence.*—*Question of Law.*—Where an automobile driver approached a familiar railroad crossing knowing that a street car had stopped for safety, and passed the street car at such speed that he was unable to stop before reaching the track after seeing an approaching train, view of which was obstructed by buildings and the street car, *held* that the driver was guilty of contributory negligence as a matter of law. p. 643.

Cleveland, etc., R. Co. *v.* Baker—190 Ind. 633.

9. RAILROADS.—*Crossing Accidents.— Personal Injuries.— Last Clear Chance Doctrine.—Applicability.*—The last clear chance doctrine is applicable in a case where there was an appreciable time intervening between a collision of a locomotive and an automobile and the injury to the automobile driver, during which time the railroad employes by the exercise of ordinary care could have prevented the injury. p. 644.

10. RAILROADS.—*Crossing Accidents.—Personal Injuries.—Last Clear Chance.—Evidence.—Sufficiency.*—In an action against a railroad company by the driver of an automobile for injuries resulting from a collision on a highway crossing between the automobile and defendant's locomotive, evidence that the automobile was pushed thirty feet in front of the engine, which was running at a speed of four miles an hour, between the time of the collision and the injury of the driver, when the machine was smashed against a switch stand, that the engineer was not at his post, etc., *held,* sufficient to sustain a finding by the jury that defendant's employes could have prevented the injury after the collision, so as to sustain a verdict for plaintiff, notwithstanding his contributory negligence in going upon the railroad crossing. p. 646.

11. APPEAL.—*Review.— Harmless Error.— Refusal of Instructions.*—In an action for personal injuries, error, if any, in refusing instructions relating exclusively to the second paragraph of complaint was harmless, where the verdict rested on the first paragraph. p. 648.

12. DEPOSITIONS.—*Examination Before Trial.—Corrections.*— Where defendant took plaintiff's written examination under oath pursuant to §533 Burns 1914, §509 R. S. 1881, it was improper for plaintiff and his counsel, when the transcribed notes were delivered for signature, to make changes in the questions and answers, but he should have been required to appear before the officer taking the examination to sign the notes, he could then have made such corrections as he desired by additional statements, subject to cross-examination. p. 649.

13. APPEAL.— *Review.— Harmless Error.—Changes in Deposition.*—Changes by plaintiff of questions and answers in his written examination taken before trial pursuant to §533 Burns 1914, §509 R. S. 1881, were not prejudicial to defendant, where plaintiff at the trial admitted he made the statements originally contained in the examination, but stated that they were incorrect. p. 650.

From Hendricks Circuit Court; *George W. Brill,* Judge.

Action by Elmer E. Baker against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Frank L. Littleton, Forest Chenoweth, Samuel D. Miller, Frank C. Dailey, William H. Thompson* and *Alexander G. Cavins,* for appellant.

*Wymond J. Beckett, Joseph R. Beckett* and *Thad S. Adams,* for appellee.

LAIRY, J.—Appellee recovered a judgment of $8,000 against appellant as damages resulting to him from a personal injury received in a collision between a tender attached to one of appellant's locomotives and an automobile driven by appellee. The collision occurred at a time when the servants of appellant were engaged in backing a locomotive with a tender back of it across West street in the city of Indianapolis, pulling a cut of two cars. The automobile driven by appellee approached from the north, and passing along the west side of a street car that had stopped a few feet north of appellant's tracks, it entered on the tracks of appellant where the collision occurred.

The case was tried on a complaint of two paragraphs to each of which a general denial was filed. The second paragraph of complaint is based on the alleged negligence of appellant in failing to ring the bell attached to the locomotive while approaching and crossing the street, and in backing a locomotive and tender across the street without having a man stationed on the rear end as required by certain ordinances of the city of Indianapolis, set out in this paragraph of complaint. The first paragraph proceeds on the theory that appellee was not harmed by the impact of the collision and that he would not have been injured if appellant's servants had exercised reasonable care after the collision

occurred in discovering his peril and stopping the loco-motive. It is alleged that after the collision the auto-mobile was negligently shoved and pushed along the track for a distance of fifty feet to a switch post and that when the wheel of the automobile came in contact with the switch post the wheels were mashed and the automobile crushed and that appellee was injured by being caught and crushed in the broken parts of the automobile.

Appellant assigns ten errors on appeal, but only the sixth and ninth are relied on for reversal, as shown by the brief. These assignments will be considered in the inverse order of their assignment.

By the ninth assignment of error it is alleged that the court erred in overruling appellant's motion for a new trial. The specifications presented by the brief are that the verdict is not sustained by sufficient evi-dence, and that the court erred in giving certain instruc-tions to the jury, and in refusing to give certain instructions tendered and requested by appellant.

Witnesses testified at the trial that the bell was not ringing as the locomotive was crossing the street, while other witnesses testified that it was ringing all the time while crossing. The same state of evi-dence obtains with reference to the presence of an employe of appellant on the rear end of the tender during the time. McGill testified that he was on the footboard on the rear end of the tender until he saw that there was about to be a collision with the approaching automobile and that he then jumped off on the south side of the track, while other witnesses stated that they were in a position to see the rear end of the tender and that nobody was on the footboard. This court can-not weigh conflicting evidence.

It is the duty of the jury in the first instance to con-sider all the evidence and to determine therefrom the

truth as to the facts in controversy. When a motion for a new trial is filed which calls in question the sufficiency of the evidence to sustain the verdict, it then becomes the duty of the trial court to consider and weigh the evidence bearing on the material facts in controversy in view of the same considerations as control the jury in determining the credibility of witnesses and the weight of the evidence. If, after such consideration the trial court is of the opinion that the jury has erred in its conclusion as to a controverted fact which is essential to sustain the verdict, it is the duty of the trial court to correct the error by granting a new trial. This is a duty from which a trial court should not shrink, for the reason that an erroneous finding as to a controverted fact cannot be corrected on appeal.

Without doubt there was some evidence to show that the bell was not ringing, and that no one was stationed on the rear end of the tender as the locomotive backed it across the street. As the ordinances read in evidence provided that these precautions should be observed under the conditions shown, the failure on the part of appellant to observe them constituted negligence as a matter of law. The case thus made entitled appellant to recover on the second paragraph of complaint, unless it was shown by the evidence that appellee was guilty of negligence which proximately contributed to cause his injury.

If the general verdict rests on the second paragraph of the complaint, it would necessarily involve a finding by the jury that appellee was not negligent in any matter which contributed in causing the collision, for the reason that this paragraph proceeds on the theory that the injury to appellee was caused by the collision. If, on the other hand, the verdict rests on the first paragraph of complaint, negli-

gence on the part of appellee which contributed to cause the collision would not defeat a recovery, for the reason that such paragraph is based on the theory that the collision did not proximately cause the injury, but that the injury was proximately caused by negligence of the appellant which intervened between the time of the collision and the time the automobile was crushed at the switch stand. Under such a state of facts, negligence on the part of appellee, to be available, must be shown to have intervened between the time of the collision and the time of the injury and to have proximately contributed to the final result.

Appellant takes the position that ordinary care, under the conditions and circumstances shown by the undisputed evidence, required the appellee to have stopped his automobile before driving past the end of the street car and onto the track, or at least to have reduced the speed at that place to such a rate as would have enabled him to stop it in case of danger before reaching the track.

The attention of the court is called to the fact that most of the circumstances and conditions surrounding appellee immediately prior to the collision are established by answers of the jury to interrogatories submitted by the court. It is well settled in this jurisdiction that, where a jury by an answer to such an interrogatory has decided a controverted fact on which there is a conflict of evidence, the answer of the jury as to such fact will be taken as true if there is evidence to support it; that this court on appeal will accept such fact as true, and will consider it in connection with the evidence in the record bearing on other material facts in determining whether the verdict is supported by evidence. *Evansville, etc., Traction Co.* v. *Spiegel* (1911), 49 Ind. App. 412, 94 N. E. 718, 97 N. E. 949; *Barr* v. *Sumner* (1915), 183 Ind. 402, 107 N. E.

675, 109 N. E. 193; *National Biscuit Co.* v. *Wilson* (1907), 169 Ind. 442, 82 N. E. 916.

Appellant asserts that, when the facts, circumstances and conditions disclosed by the answers to interrogatories are accepted as true, and that, when such facts are considered in connection with the evidence most favorable to appellee in regard to conditions and circumstances not covered by such answers, a case is made out which required the court to state as a matter of law that ordinary care required appellee to stop before driving past the end of the street car, or to reduce the speed of the car to such a rate as would have enabled him to stop before reaching a place of danger.

What a person of ordinary prudence would do or refrain from doing under a given state of conditions and circumstances and in view of the dangers to be anticipated, is generally a question of fact for the decision of a jury. The only exception to the rule arises where the conditions and circumstances and all other facts bearing on the question are undisputed, and where they give rise to a single inference or conclusion concerning which all reasonable minds would agree. These propositions have been so often stated as to require no authorities to sustain them.

Appellant relies on the exception stated to the general rule as applicable to the facts and circumstances shown by the record in this case.

It cannot be stated as a general proposition of law that ordinary care requires a traveler on a highway to stop before entering on the track of a steam railway company, and neither can it be generally stated as a matter of law that ordinary care does not require that precaution. Whether such precaution is or is not required in the exercise of due care depends on the conditions and circumstances disclosed in the particular case. In the vast majority of cases the question

is one of fact, and the cases must be rare which require the court to decide it as a question of law, but there can be no doubt that such cases have arisen and that they will continue to arise.

As bearing on the question under consideration, the record discloses certain facts which this court is required to accept as true in passing on the question presented. The facts following are shown: first, by the answers to interrogatories; second, by facts disclosed by undisputed evidence; and third, by facts disclosed by the evidence most favorable to appellee. The collision occurred about four o'clock, p.m., on West street where the switch track of appellant crosses that street at a point a short distance south of a bridge spanning the canal. West street extends north and south with a double street-car track near the center and the switch track of appellant crosses the street and the car track nearly at right angles. Just before the collision occurred, a street car running on the west track approached from the north and came to a stop with the front end of the car twelve feet north of the north rail of appellant's track. The street car was forty-five feet in length. As the car approached the track and stopped, appellee came up from behind, driving an automobile without a top and, passing along the west side of the car about midway between the car and the curb, drove past the south end of the car and on to the track of appellant where the automobile was struck by the rear end of a tender which was being pushed westward by a locomotive on appellant's tracks. The automobile driven by appellee was fourteen feet long, and appellee was seated about seven feet back from the front end. Appellee testified that, as the car approached the track, he was about thirty or thirty-five feet behind it and that he could not, from that position, see the gate on

the east side of the street through which the cut of cars came before crossing the street; and, the jury found in answer to an interrogatory that he could not see the cut of cars approaching from the east before he over-took the street car because he was prevented by a building and the street car. While appellee was passing along the side of the standing street car, his view toward the east was cut off by the street car. Appellee had on his head a tight-fitting skin cap, which came down over his ears, and which, in some degree, impaired his ability to hear. The street car had stopped at the time for the purpose of enabling the conductor to discover whether there was a train or cut of cars approaching before attempting to cross the track. Appellee saw that the car had stopped when he was some distance back of it; he knew that it was the practice of the street car company to stop its cars before crossing the railroad tracks to ascertain whether a train was approaching, and he also knew that the car had been stopped at that time for that purpose. Appellee testified that he had passed over the railway track on West street at the place of the accident about twenty-two times each week for a period of ten months previous to the accident; that he knew it was a railroad track, that he had frequently seen locomotives backing there and knew that trains, switch engines and cars were likely to come along there from either direction at any minute. Appellee further stated in his testimony that he was driving at the rate of about six miles an hour and that he did not stop but slowed down a little before going on the track. His testimony further shows that, when he reached a position from which he could see past the front end of the car, he observed the locomotive about twelve or fifteen feet east of the car tracks, backing west; and that he applied the brakes and attempted to stop the car, but could not get it stopped until it was on

the track. The jury found that the collision occurred immediately after the automobile moved past the south end of the street car and on to the track.

It thus appears that appellee was entirely familiar with the conditions surrounding him as he approached the track of appellant and understood the danger to be anticipated in crossing it. His view to the east was completely obstructed so that it was impossible for him to see any locomotive or cars approaching from that direction. He knew that engines and cars were likely to cross from either direction at any minute. He knew that the street car had stopped near the track to enable those in charge to ascertain whether it was safe to cross. Knowing all this, he did not wait to see the result of the investigation of the street car employes, but drove past the car without stopping to listen, although his hearing was obstructed to some extent by a cap pulled down over his ears. The south end of the car was twelve feet from the north rail of the track; and, when he came into a position from which he could see the threatened danger, his car was moving at a rate of speed which prevented him from stopping it before it reached the track.

The court is of the opinion that a person of ordinary prudence, acting under the circumstances and conditions shown in this case and having the same knowledge possessed by appellee as to the danger to be anticipated, would have operated the car at such a rate of speed as would have enabled him to stop it after reaching a place from which he could see past the south end of the street car and before reaching the track. It is manifest to the court that no other conclusion or inference could be drawn from the facts stated and that there is no room for reasonable minds to differ on the subject. It is therefore held in this case that appellee was guilty of contributory negligence

as a matter of law under the conditions and circumstances shown in this case, and that the verdict cannot rest on the second paragraph of complaint. It is probable that the jury reached the same conclusion in deciding the question as one of fact, and that it rested the verdict on the first paragraph of complaint. Some of the answers to interrogatories would seem to indicate such a result; but, as appellee's counsel declined in oral argument to concede that the verdict rests on the first paragraph alone, the court has seen fit to consider the question presented.

This brings us to a consideration of the first paragraph of the complaint, which bases the liability of the appellant on the principle of antecedent and

9. subsequent negligence. Appellant asserts that the principle has no application to a case where an injury follows a collision as a direct or an indirect result. Certain authorities are cited in the brief to sustain this position. *Rider* v. *Syracuse, etc., R. Co.* (1902), 171 N. Y. 139, 63 N. E. 836, 58 L. R. A 125; *Woods* v. *Longville Lumber Co.* (1917), 141 La. 267, 74 South. 990; *Hartley* v. *Lasater* (1917), 96 Wash. 407, 165 Pac. 106, 108.

The case first cited discloses a state of facts very similar to that presented by the case now before this court. In that case it appeared that a street car collided with a buggy which was crossing the track. After being pushed along the track for some distance by the moving car, the buggy was overturned and the occupant thrown out and injured. The majority opinion of the court held that the collision and all that followed up to and including the overturning of the buggy and the injury to the occupant was a single indivisible transaction, which could not be separated into two parts in considering the question of proximate cause. The opinion decides that any negligence which proximately contributed

to bring about the collision should be carried forward, and should be regarded as the proximate cause of the overturn of the buggy and the injury of the occupant, even though the latter occurrence could have been prevented after the collision by the exercise of reasonable care by the motorman and even though the motorman failed to exercise such care. The court was divided four to three, and the three dissenting judges joined in an opinion, the reasoning of which is in accord with former holdings on the subject in this state. This court is not in accord with views expressed in the majority opinion. Under the rule there stated, it could make no difference how much time might have elapsed between the collision and the injury, or how ample the opportunities might have been for preventing the injury in the time intervening. It is no doubt true that in most cases of this character the injury is inflicted at the instant of the collision, or that the time intervening between the collision and the injury is so brief as to make it clear to any reasonable mind that the injury could not have been prevented by intervening care or caused by intervening negligence. In such cases the court should decide the question as a matter of law and should refuse to submit the question to the jury by instructing on the subject of last clear chance. The last two cases cited by appellant are decided by an application of the principle just stated. On the other hand, cases frequently arise involving a state of facts from which reasonable minds might well differ and might reach opposite conclusions on the question involved. In such cases a question of fact arises for the decision of the jury which must be determined from a consideration of the space of time intervening between the collision and the injury, the speed at which the instrumentality causing the injury was moving, the means and opportunities available to those in charge for preventing the injury, and the

evidence bearing on the care or want of care by those in charge in making use of such means in the interval.

To bring this case within the principle stated, it must appear that the collision did not directly and immediately cause the injury, but that the injury resulted from something which happened some appreciable time after the collision as a direct result of intervening negligence. By intervening negligence is meant a failure on the part of appellant to exercise ordinary care to avoid the injury after the collision occurred and before the injury was inflicted.

The evidence most favorable to appellee relating to this question shows that the automobile in which he was riding at the time it was struck was on the railroad crossing about halfway between the street car track and the west curb. The distance of the curb from the street car track was seventeen feet and eight inches. This would show that the west wheels of the automobile were about six feet from the curb when the collision occurred. It was twelve feet from the curb to the sidewalk and the sidewalk was eight feet wide. The switch was two and one-half feet west of the sidewalk. Appellee testified that he was not injured when the collision occurred, but that he was fastened in the seat by the coupler of the tender which passed across his legs and held him so that he could not extricate himself from the danger. He also testified that he was injured when the west front wheel of the automobile came in contact with the switch block, at which time that wheel was crushed permitting the right side of the car to drop whereby appellee was thrown out on the west side of the car. The injury was caused, as shown by the testimony of appellee, by the automobile being pushed over him by the movement of the locomotive while he was in that position. The evidence most favorable to the verdict shows that the speed of

the train at and before the time of the collision was about four miles an hour, and the undisputed evidence shows that the automobile was pushed along the track in front of the tender to and beyond the switch block before the train was stopped.

The vital question to be determined is: Was there sufficient time between the collision and the injury to admit of the effective use of care to avoid it; and, if so, did those in charge of the moving cut of cars exercise such care as persons of ordinary prudence would have used under like circumstances? There was conflicting evidence as to most of the questions thus involved; and, from a consideration of the facts disclosed by the evidence most favorable to appellee, reasonable minds could well differ as to the ultimate conclusion to be drawn. The questions were therefore properly submitted to the jury, to be determined as matters of fact under the instructions of the court as to the law.

Appellant asserts that there is no evidence to show a want of ordinary care on the part of its servants after the collision and before the injury. The attention of the court is called to evidence introduced by appellant, by which it is shown that McGill was on the footboard at the rear of the tender and that, when he saw that there was about to be a collision, he jumped off on the south side of the track, and immediately signaled the engineer to stop the train. The engineer testifies that he was at his proper place in the cab of the engine, and that he saw the signal and immediately applied the air in an attempt to stop the train. Whatever may be said as to the force and effect of this evidence if standing alone, it is sufficient to say that it is not undisputed. There is evidence to show that McGill was not on the footboard as he said, but that he was on the north side of the track at the time the collision happened, and that he crossed the train between the first and second cars, and then

went to the front end of the engine and applied the air by means of a cock there located. There is also evidence from which the jury may have found that the engineer was not at his proper station in the cab when the collision occurred. A witness testified that he was in a position to look through the cab and that no one was in the engineer's seat, the only man visible being bent over in an attitude to indicate that he was shoveling coal. There was also evidence to show that the train did not slacken its speed at any time after the collision until the air was applied by McGill and that it then stopped within a distance of a few feet. There is some evidence to sustain the verdict on the first paragraph of complaint. It is to be assumed that the trial court, who saw the witnesses on the stand and had an opportunity to judge of their credibility, reviewed the evidence in considering the motion for a new trial and that it approved the verdict in the light of the evidence. The verdict cannot be disturbed by this court on the weight of the evidence.

The court might have sustained the motion of appellant for a peremptory instruction in its favor as to the second paragraph of the complaint without committing error; but, as the verdict rests on the first paragraph of complaint, any error in giving or refusing to give instructions relating exclusively to the second paragraph must be regarded as harmless. As indicated by the answers to interrogatories, the verdict would have been the same had the second paragraph of complaint been withdrawn from the jury.

An examination of the instructions pertaining to the first paragraph of complaint shows that the jury was fully and fairly instructed as to the law applicable to the evidence. The instructions tendered by appellant applicable to that paragraph which were refused were

covered by other instructions in so far as they contain a correct statement of the law.

One other question is presented which requires consideration. It appears from a special bill of exceptions contained in the record that, after the action was commenced and before the trial, appellant took the written examination of appellee under oath pursuant to the provisions of §533 Burns 1914, §509 R. S. 1881. The examination was taken before a notary public in shorthand; and, when it was written out on the typewriter, it was given into the custody of the attorney for appellee to procure the signature of his client. When appellee came in to sign it several important and material changes were made in the answers given to questions propounded, and some of the questions propounded by appellant's attorney were changed so as to make the answers thereto conform to other answers which had been changed. On learning of the changes made in the examination, appellant made a showing of the facts to the court and based a motion thereon to strike out appellee's complaint. Appellee made a counter showing by affidavits and the court, after considering the matter, denied appellant's motion. This ruling is assigned as error on appeal.

The law does not contemplate that an examination or a deposition should pass out of the possession of the officer who takes it before it is filed with, or mailed to the clerk of the court in which the action is pending. The person whose examination is taken should be required to appear before the officer and sign it in his presence. If the party or witness, as the case may be, desires to make any corrections or changes in his testimony, a time should be fixed by the officer and the attorneys for both parties to the action should be notified. At the time fixed the attorney representing the

party or calling the witness should be permitted to ask additional questions to bring out the changes or corrections which the party or witness desires to make, after which the attorney for the other party should have an opportunity to cross-examine as to the corrections and changes made; but no changes should be made in the deposition or examination as originally taken. The Appellate Court has spoken on this question in the case of *Rump* v. *Woods* (1912), 50 Ind. App. 347, 98 N. E. 369, and it is not necessary to reiterate what was there said. The practice of changing the substance of an examination by one party to the action in the absence of the other, and without his consent, is one which the courts cannot approve.

In this case, however, the record shows that appellee in his testimony at the trial, admitted that the examination as originally taken and before any changes were made correctly stated his testimony as he gave it on the examination before the trial. He stated in his testimony that he made the answers originally shown in the examination, but that they were incorrect, and that the facts as stated by him at the trial, and as shown in the changes made in the answers were true. Appellant was permitted to cross-examine him on the matter and to introduce evidence showing all the circumstances under which the changes in the examination were made. The whole matter was before the jury and it had an opportunity to consider all the facts and circumstances disclosed as affecting the credibility of appellee as a witness. Under such a state of the record, the ruling of the trial court did not prejudicially affect the rights of appellant.

Judgment affirmed.