INDIANA BELL TELEPHONE CO., INC. *v.* ICE SERVICE, INC.

[No. 20,551. Filed December 19, 1967. Rehearing denied January 9, 1968. Transfer denied February 21, 1968.]

*Bruce N. Cracraft,* of Indianapolis, *Gilbert Shake,* of Vincennes, *Bamberger, Foreman, Oswald and Hahn,* of Evansville, *Hyle G. Burke,* of counsel, of Indianapolis, for appellant.

*William D. Stephens, Howard C. Sandusky, Harry P. Dees, Joseph A. Yocum,* all of Evansville, *Kahn, Dees, Donovan & Kahn,* of counsel, of Evansville, for appellee.

PFAFF, J.—Appellee's name, address and telephone number were omitted from both the white (alphabetical) and yellow (classified) sections of appellant's Evansville 1960-1961 telephone directory which was distributed in October, 1960, although appellee had retained the particular business telephone service for a number of years. It is not contended that the omission was deliberate and intentional.

On November 10, 1960, appellee's president and a vice-president of appellant had a lengthy meeting concerning this omission. The present action was brought by appellee based upon an oral contract allegedly entered into between the parties at this meeting and its subsequent breach by appellant. It is not an action for damages for the omission. Trial by jury resulted in a verdict in favor of appellee for $19,750.00, upon which judgment was entered.

Much of appellant's argument is based upon its contentions, which are presented in several ways, that the contract is unenforceable and void for the reason that it is indefinite and uncertain and contemplated actions which were illegal in that

they were violative of appellant's tariff as approved by the Public Service Commission of Indiana. It is also claimed that the amount of recovery is erroneous in that it is too large.

The applicable parts of the tariff provided the following:

"The rates and regulations for directory listings in this section apply only to that section of the directory containing the regular alphabetical list of customers.

. . . . .

"The Telephone Company, except as provided herein, shall not be liable for damage claimed on account of errors in, or omissions from its directories, nor for the result of the publication of such errors in the directory, nor will the Telephone Company be a party to controversies arising between customers or others as a result of listings published in its directories. Claims for damages on account of interruptions to service due to errors or omissions in directory listings will be limited to a pro rata abatement of the charge for such of the customer's service as is affected, the maximum abatement not to exceed one-half the service charges for the period from the date of issuance of the directory in which the mistake occurred to the date of issuance of a new directory containing the proper listing. . . ."

This tariff provision applied to the white (alphabetical) section of the directory only. There was no similar provision as to the yellow (classified) section, and appellant does not contend that the tariff had any effect upon its freedom to contract for the correction of errors contained therein.

The jury found, in answer to interrogatories submitted to it at the request of appellant that the appellant and appellee on November 10, 1960, entered into an oral contract whereby the appellant agreed to insert stickers bearing the appellee's name, address and telephone number in both the white or alphabetical section and the yellow or classified section of approximately 30,000 of the appellant's October, 1960, Evansville telephone directory by March 1, 1961, and appellee agreed to pay all costs incurred by appellant in connection with in-

serting the stickers; that appellee agreed as part of such oral contract to give the appellant a release for all claims arising out of the omission of appellee's name, address and telephone number in both the white and yellow sections of such directory in return for the insertion of such stickers.

In passing upon the sufficiency of the evidence to support a verdict, the answers of the jury to interrogatories are accepted as establishing the facts found unless they do not have support in the evidence. *Cleveland, etc. R. Co.* v. *Baker* (1921), 190 Ind. 633, 128 N. E. 836; *Standard Oil Co.* v. *Allen, Admr.* (1920), 189 Ind. 398, 126 N. E. 674; *Sourbrier* v. *Brown* (1919), 188 Ind. 554, 123 N. E. 802; *Neuwelt* v. *Roush* (1949), 119 Ind. App. 481, 85 N. E. 2d 506.

Appellant's vice-president, at the meeting of November 10, 1960, said he would check with his crew which was an independent crew, and that appellant's president should call him on December first and he would have all arrangements made. When the call was made on December first to see if arrangements had been made, appellant's vice-president said he was not going to do anything.

Thereafter, appellee employed a local advertising agency to place stickers in the telephone directory. This agency had Boy Scouts and Girl Scouts place stickers in some 32,600 telephone directories. Appellee's witness testified that this was done during the period of May 6, 1961, through May 13, 1961, after certain newspaper, television and radio publicity concerning it. The jury found, in answer to an interrogatory, that this was completed by June 6, 1961. While total expenditures in connection with the sticker campaign, including the cost of printing the stickers was $3,615.60, appellee does not argue that this cost should be a part of the recovery. Expenses of $4,382.24 were incurred for other phases of the agent's campaign for radio, newspaper and television advertising of the fact that appellee's name and telephone number had been omitted from the directory.

Business telephone subscribers were entitled to a listing in the white pages, and were also entitled, under appellant's policy, to a listing in the yellow pages without additional charge and without a separate contract therefor.

Appellant argues that since its liability was limited by reason of an omission from the white pages to a maximum of an abatement of one-half of its service charges, the contract calling for a single and indivisible consideration in settlement of its liability for omissions from both the white and yellow pages was enforceable and void in that it violated appellant's tariff, from which it could not lawfully deviate.

There is no dispute in this case as to the fact that appellant is a utility subject to regulation by the Public Service Commission of Indiana, and that its rates are fixed by such Commission, from which rates it cannot lawfully depart. Neither is there any dispute as to the validity of that part of the tariff provision fixing appellant's maximum liability for omissions from the white pages of the directory. It is noted that provisions limiting the liability for directory errors or omissions and which have been approved by a state regulatory body have been upheld in other states. *McTighe* v. *New England Telephone and Telegraph Co.* (2d Cir., 1954), 216 F. 2d 26; *Correll* v. *Ohio Bell Telephone Co.* (Ohio App., 1939), 27 N. E. 2d 173, 174; *Riaboff* v. *Pacific T. & T. Co.* (1940), 39 Cal. App. 2d 775, 102 P. 2d 465; *Wade* v. *Southwestern Bell Telephone Company* (Texas Ct. of App., 1961), 352 S. W. 2d 460, 92 A.L.R. 2d 913.

The court in *McTighe* v. *New England Telephone and Telegraph Company, supra,* at page 28, said:

> ". . . The fixing of rates is a legislative function, and the power to fix rates and regulate matters affecting rates is commonly delegated to state administrative bodies such as Public Service Commissions. For example in Vermont the Act of 1908, Laws, 1908, No. 116, gave the Vermont Public Service Commission jurisdiction over the conduct of the public telephone business together with broad powers for its effective and complete supervision. Among other

things the statute requires supervised companies to file rate schedules and 'as a part thereof . . . the rules and regulations that in any manner affect the tolls or rates.' The alphabetical directory, 'as an aid to the use of the telephone system,' was under the control of the Public Service Commission and subject to the rules and regulations for directory listings. The reasonableness of these rules and regulations is determined by the Public Service Commission in the exercise of the power delegated to it by the legislature. Accordingly, the 'contract' with reference to the alphabetical directory, having been sanctioned as reasonable by the Public Service Commission in the exercise of its regulatory functions, is no longer one in connection with which the courts have the power to examine into the question of reasonableness on a collateral attack. . . ."

There is no dispute concerning the proposition that appellant could not lawfully contract for a greater liability concerning the white pages alone than that fixed by the tariff. As previously stated, appellant does not contend that the tariff had any effect upon its freedom to contract for the correction of errors contained in the yellow pages. No exculpatory clause applied to such an omission. Having such freedom, it could contract to pay monetary damages or to do some particular act or acts, regardless of whether or not such acts were in connection with the yellow pages. Appellant's contention is that it could not by one contract with an indivisible consideration contract to place stickers in both the white and yellow pages in return for a release of all liability.

Applying appellant's general contention, it would seem that had the contract been that appellant would insert the stickers in both the white and yellow pages, whereupon appellee would give it a release for all claims arising out of the omission from the yellow pages only, it would have been valid. But appellant argues that by agreeing to give a release also of claims arising from the omission from the white pages the contract became unenforceable and void. None of the authorities cited by appellant support this contention, nor have we found any which do. We find no merit in appellant's contention.

Appellant's contention that there was a want of mutuality, certainty and definiteness is based on the argument that the quality and extent of the performance of one of the contracting parties was left to its own determination and was not otherwise ascertainable from the agreement, and that there was no fixed agreement as to the time of performance, is not supported by the facts in evidence. In the same category is the argument that there was no discussion of the method to be used in placing the stickers in the directories or which directories were to be included.

The contract was not invalid because the cost of inserting the stickers was not agreed upon and could not be ascertained at the time. Where there is an agreement that compensation is to be paid but the price is not fixed, the party furnishing services and materials in performance of the contract is entitled to the reasonable value thereof. 6 I.L.E., *Contracts*, § 181, p. 214; 17A C.J.S., *Contracts*, § 363, p. 367; 17 Am. Jur. 2d, *Contracts*, § 364, p. 782. Similarly, the contract was not invalid for failing to specify a definite time for appellee to reimburse appellant for inserting the stickers. The bill was to be submitted to appellee after the work was completed. Where a contract for the payment of money fails to fix a time, the law supplies the omitted element. 6 I.L.E., *Contracts*, § 163, p. 208; 17 Am. Jur. 2d, *Contracts*, § 338, p. 775; *Brown* v. *Brown* (1885), 103 Ind. 23, 2 N. E. 233.

Under the oral contract the insertion of the stickers was to be completed by appellant by March 1, 1961. Arrangements were to be made by appellant with an independent crew by December 1, 1960. The exact date for the beginning of the insertion of the stickers was not fixed. Such insertion of stickers was actually completed by appellee on June 6, 1961. Damages for loss of profits for failure to insert such stickers would, therefore, be limited to the loss occasioned by the failure to have such stickers inserted during the period from which the stickers were to be inserted by appellant (by March 1, 1961) and when they were actually

inserted by appellee. Inasmuch as this is not an action for damages for omission of appellee's name and number from the directory, but for a breach of contract entered into after such omission, we are not here concerned with amount of damages caused by the original omission.

Damages are to be computed as of the date fixed for performance. The contract is not treated as though it contained a promise to perform as of the date of repudiation. 22 Am. Jur. 2d, *Damages*, § 52, p. 81; 25 C.J.S., *Damages*, § 74, pages 850 and 851; 5 Williston on Contracts (Revised Edition), § 1397, p. 3899; *Restatement, Contracts* § 338.

There was no evidence as to the loss of profits occasioned by the absence of the stickers, prior to June 6, 1961, and following the time when appellant was to have inserted them, but the evidence is as to a reduction of net profits during the twelve months period, which included this period, as compared to the twelve months period before and the twelve months after. It is speculative and conjectural to say that the loss of profits for an entire year is to be considered as proximately caused by the absence of the stickers during the months in question, particularly, in view of the fact that the original omission and not the breach of the oral contract may have caused much of the loss.

The court's Instruction No. 9, given over appellant's objection, reads in part as follows:

> "First, if you find by a preponderance of the evidence that there was a contract as alleged by the plaintiff by which defendant agreed to place plaintiff's name and phone number by stickers in the yellow section of the phone book in question, that defendant breached that provision and that plaintiff was damaged thereby, then you will include the actual pecuniary damages which plaintiff suffered thereby from December 1, 1960 to December 1, 1961."

Objection thereto, reads as follows:

> "The instruction number 9 is further erroneous inasmuch as in the paragraph headed "First" [is] assumes the

actual pecuniary damages which plaintiff suffered by stating 'then you will include the actual pecuniary damages which plaintiff suffered thereby from December 1, 1960 to December 1, 1961' and does not permit the jury to find the same but rather mandates the jury and assumes that such damages have been sustained."

We are of the opinion that the court's Instruction No. 9 assumed the fact that appellee sustained actual pecuniary damages when no probative evidence of recoverable damage was shown, and thus this instruction erroneously informed the jury that it could include all damages suffered by appellee from December 1, 1960, to December 1, 1961, when the benefit of appellee's bargain had been obtained by June 6, 1961. Therefore, no damages could have naturally resulted from its breach after that date. An instruction which assumes damages is not only erroneous but obviously prejudicial to the defendant. *Bd. of Com'nrs. etc.* v. *Flowers* (1964), 136 Ind. App. 597, 201 N. E. 2d 571. (Transfer denied) ; See also 26 West's Ind. D., *Trial,* § 296 (1), pp. 580-583 (1953), and cases cited.

Such prejudice is further compounded where the court's instruction placed the injured party in a better position than it would have been if the contract had been performed, by permitting the jury to award damages for loss of profits for a period beyond the time when the benefit of the bargain had been gained by appellee. *Irving et al.* v. *Ort et al.* (1957), 128 Ind. App. 225, 232, 146 N. E. 2d 107, 109. (Transfer Denied).

This instruction is erroneous and requires a reversal of the judgment.

Therefore, said judgment is reversed and this cause is remanded to the trial court with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent herewith.

Cook, P. J., Bierly and Smith, JJ., concur.

NOTE.—Reported in 231 N. E. 2d 820.