William L. SEIBERT and Marjorie L. Seibert, Appellants (Defendants Below),

v.

James MOCK, Appellee (Plaintiff Below).

No. 49A04–8610–CV–298.

Court of Appeals of Indiana, Fourth District.

July 28, 1987.

Albert George, Indianapolis, for appellants.

Donn H. Wray, Stewart Irwin Gilliom Meyer & Guthrie, Indianapolis, for appellee.

CONOVER, Presiding Judge.

Defendants-Appellants William L. Seibert and Marjorie L. Seibert (collectively the Seiberts) appeal a breach of contract damage award in favor of Plaintiff-Appellee James Mock.

We affirm.

ISSUES

■■■■ The Seiberts present five issues for our review. We restate them as four:[1]

1. whether the trial court erred by not applying the doctrine of Caveat Emptor;

2. whether the trial court erred by refusing to admit evidence of Mock's resale of the laundromat;

3. whether there was sufficient evidence to support the damage award; and

4. whether the trial court correctly awarded attorney fees.

Mock raises an additional issue, whether he is entitled to appellate attorney fees.

FACTS

The Seiberts entered into an agreement to sell "The Laundry Room" to Mock on September 1, 1983, for $25,000. The business consisted of specifically enumerated fixtures and equipment and the leasehold rights to the real estate. After the sale Mock demanded his money back claiming he was cheated. Mock claimed a boiler was defective, wiring was defective and equipment did not function as promised by the Seiberts. Mock filed suit for breach of contract and the court awarded him $7,670 in damages and $8,157.15 for expenses and attorney fees.

Other facts necessary to our decision appear below.

DISCUSSION AND DECISION

On appeal, this court will neither reweigh the evidence nor judge the credibility of witnesses. We consider only the evidence most favorable to the prevailing party, together with all reasonable inferences which may be drawn therefrom. *Maddox v. Wright* (1986), Ind.App., 489 N.E.2d 133, 134, *reh. denied.* A judgment will not be set aside unless there is a total lack of evidence or it is contrary to the uncontradicted evidence. *Houin v. Bremen State Bank* (1986), Ind.App., 495 N.E.2d 753, 757.

■■ The Seiberts contend the trial court erred by not applying the doctrine of Caveat Emptor. Caveat Emptor means literally let the buyer beware. *Kellogg Bridge Co. v. Hamilton* (1884), 110 U.S. 108, 3 S.Ct. 537, 28 L.Ed. 86. Under the theory of Caveat Emptor the buyer takes goods "as is".

■■ To abrogate the harshness of Caveat Emptor a person may demand warranties from the seller concerning the quality of the goods to be bought. In fact, Mock did receive warranties which make Caveat Emptor inapplicable to the items warranted by the Seiberts.

The addendum to the purchase agreement provided

"2. All equipment to be in operating order at time of closing." and

---

1. The Seiberts also discuss fraud as a separate issue. The Seiberts argue the trial court did not find fraud and did not award damages on the basis of fraud. They contend any fraud issue was resolved in their favor and, thus, do not cite any authority or make any arguments on this issue.

The trial court ruled the Seiberts could not recover punitive damages for fraud because of a lack of factual findings. (R. 671). Punitive damages requires a showing of malice, fraud, willfulness or wantoness, gross negligence or oppression. *Orkin Exterminating Co. v. Traina* (1986), Ind., 486 N.E.2d 1019. The burden for proving actionable fraud, as is involved here, is lower and may form a basis for the judgment. Accordingly, the Seiberts have mistakenly left out an important discussion of fraud which is necessary to their position.

The trial court entered a general verdict. It did not state the basis for its decision. If the decision of the trial court can be sustained on any legal theory we must do so. *Marshall Co. Redi-Mix v. Matthew* (1984), Ind., 458 N.E.2d 219, 221. By not attacking the verdict on a fraud theory which was argued at trial, the Seiberts have conceded the correctness of the judgment. *See Nehi Beverage Co., Inc. of Indianapolis v. Sims* (1987), 509 N.E.2d 1125, 1129.

However, we may resolve this dispute by not discussing fraud but rather by addressing the issue of breach of contract which was briefed by the Seiberts.

"The landlord seller guarantees all major components on heating." [2].

Concerning warranties, Judge Shields stated,

> Ordinarily, the term "warranty" implies an agreement to be responsible for all damages that arise from the falsity of an assurance of fact, 67 AM.Jur.2D *Sales* § 425 (1973), or "a promise that certain facts are truly as they are represented to be and that they will remain so, subject to any specified limitations," BLACK'S LAW DICTIONARY 1423 (5th ed. 1979). Furthermore,
>
> > "[w]arranties while collateral to the principle purposes of the contract are a part of the contract. They enter into the contract of sales as an element thereof on which the minds of the contracting parties meet, and as a part of the consideration for the purchase."
> > *McCarty v. Williams*, (1914) 58 Ind. App. 440, 445, 108 N.E. 370.
>
> Additionally, in Indiana, courts construe a contract most strongly against the person who prepares it. *Colonial Discount Corp. v. Berkhardt*, (1982) Ind.App., 435 N.E.2d 65; *English Coal Co., Inc. v. Durcholz*, (1981) Ind.App., 422 N.E.2d 302.

*Aamco Transmission v. Air Systems, Inc.* (1984), Ind.App., 459 N.E.2d 1215, 1217, trans. denied.

■ Although the Seiberts deny inoperability, evidence was presented the lights, plumbing, extractor and water softener were not in "operating order" at the time of closing. We will not reweigh this evidence. These items fall within the warranty found in the second paragraph of the addendum.

The boiler is a part of the heating system specifically guaranteed in the addendum. The water softener may also be viewed as part of the heating system. An expert testified the heating system needed soft water. It was reasonable to find the boiler and water softener were major components of the heating system covered by the warranty. We will not reweigh this evidence.

The Seiberts contend the contract negated any warranty. It provides, in part,

> 9. *Representations by Buyer:*
>
> The Buyer warrants and represents that he has inspected and is familiar with the premises, and with the condition of all fixtures, equipment and personal business property therein.

(R. 405).

The Seiberts contend this section of the contract relieves them from all liability for any repairs needed to be made at the time of the sale. Such an interpretation of the contract would render the addendum section meaningless.

■ The construction of a written contract is generally a question of law for the trial court, not a question of fact. *Kleen Leen, Inc. v. Mylcraine* (1977), 174 Ind. App. 579, 369 N.E.2d 638. If the terms of a written contract are ambiguous, it is the responsibility of the trier of fact to ascertain the facts necessary to construe the contract. *R.R. Donnelley & Sons, Co. v. Henry-Williams, Inc.* (1981), Ind.App., 422 N.E.2d 353, 356. A contract is ambiguous when reasonable persons would find its terms subject to more than one interpretation. *Fort Wayne Cablevision v. Indiana & Michigan Electric* (1983), Ind.App., 443 N.E.2d 863, 866.

■ It is the duty of the court to interpret a contract so as to ascertain the intent of the parties; it should accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. *R.R. Donnelley & Sons, Co., supra.* It was reasonable for the trial court to determine the Seiberts's express warranties were not abrogated by Mock's warranty he had inspected and was familiar with the fixtures in the laundromat. Because the Seiberts breached their warranties, the trial court did not err by awarding Mock damages for breach of contract.

The Seiberts also claim the evidence was insufficient to support the damage award. We disagree.

---

**2.** Two photocopies of the addendum were entered into evidence which were identical except

"For 30 days" was printed on one of the photocopies *after* the word "heating."

In reviewing a challenge to a damage award, we will consider only the evidence favorable to the award. *Duchane v. Johnson* (1980), Ind.App., 400 N.E.2d 193, 197. To support an award for compensatory damages, facts must exist and be shown by the evidence which afford a legal basis for measuring the plaintiff's loss. *Indiana University v. Indiana Bonding & Surety Co.* (1981), Ind.App., 416 N.E.2d 1275, 1288, *trans. denied.* The damages must be ascertainable in a manner other than by mere speculation, conjecture, or surmise, and must be referenced to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances. *Id.*

Evidence was presented a new single unit boiler would cost between $10,000 and $15,000. Mock estimated a properly working used boiler would be worth $5,000. Mock spent $4,500 to replace the boiler, rented a boiler for a number of months and claimed to have lost business because of the problems with the boiler he bought from the Seiberts. We will not reweigh this damage amount. The water softener cost $1,800 to replace, which Mock installed himself. It was estimated the water softener he replaced was worth $5,000 when properly working. Mock also testified he spent $740 to repair the wiring for the lights, $500 to repair the plumbing, $80 to repair an extractor machine and $50 to replace anti siphon valves. These amounts were not challenged as excessive by the Seiberts.

The damage award was well within the scope of the evidence presented at trial. The values of the items were ascertained by Mock's estimation of market value and from the amounts he expended to make repairs. The award was not unreasonable.

The Seiberts contend the trial court erred by refusing to admit evidence of Mock's resale of the laundromat twenty-three months after the first sale.

Evidence of sales of property similar in locality, quality and character at a time not so remote as to eliminate the probative value of the evidence is admissible. CJS *Evidence* § 593(3)(b). Remoteness is a question within the trial court's discretion. *Bryan v. State* (1983), Ind., 450 N.E.2d 53, 61.

The issue before the court was whether the contract had been breached on the date of performance and the amount of damages experienced on the date of performance. *Indiana Bell Telephone Co. v. Ice Services, Inc.,* (1967), 142 Ind.App. 23, 231 N.E.2d 820; *Tyler Refrigeration Corp. v. IML Freight* (1981), Ind.App., 427 N.E.2d 718.

Under the circumstances of this case, it was not unreasonable for the court to conclude a resale two years after the date for performance of the first sale, was too remote to be probative. We cannot say the trial court abused its discretion by refusing to hear evidence of the resale.

The Seiberts next contend the trial court erred by awarding Mock $8,157.15 in attorney fees.

Attorney fees are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specifically authorizing them. *Kikkert v. Krumm* (1985), Ind., 474 N.E.2d 503, 505. The purchase agreement provided in part,

16. *Attorney fees:*

In the event that any party to this agreement retains an attorney to enforce any of the obligations under this contract, including but not limited to any default, the other parties agree to pay the attorney fees and Court costs, if any, if the Court rules that the other party was solely in default.

(R. 405).

Thus, attorney fees were allowable pursuant to the contract. The Seiberts do not dispute this fact. The Seiberts do dispute the amount of attorney fees awarded in this case claiming they are unreasonable.

Proof is required of the nature of the legal services and the reasonableness of the fee. *Wisconics Engineering, Inc. v. Fisher* (1984), Ind.App., 466 N.E.2d 745, 768, *reh. den'd.*

Mock's attorney testified as to the hourly rate usually charged in the community for the type of work performed by him. He also gave an accounting of the hours spent on this case. Ample evidence existed upon which the trial court based its award of attorney fees. We will not reweigh this evidence.[3]

The Seiberts make the bald assertion since Mock's attorneys took this case on a contingency fee basis, the award was unreasonable. The Seiberts cite no authority which would require a court to award fees on a contingency scale. The standard set by our appellate court is that fees are to be awarded which are reasonable. The Seiberts have a duty on appeal to demonstrate the hourly fee assessment was unreasonable. They have not done so.

Mock contends he is entitled to appellate attorney fees. Our courts for many years traditionally denied appellate attorney fees in cases where attorney fees are provided for in a contract provision. We viewed an award of attorney fees as merged in the judgment and not available for appellate fees. *See, e.g., McCormick v. Falls City Bank* (7th Cir.1892), 57 F. 107.

More recently, we have recognized the parties to such a contract intended to indemnify the injured party and have excepted appellate attorney fees from the general rule of merger on equitable principles. *Radio Distributing v. National Bank & Trust* (1986), Ind.App., 489 N.E.2d 642, 649.

Thus, Mock may be entitled to additional attorney fees.[4] However, the preferred procedure is for the trial court to hear the evidence and determine a reasonable fee when the appeal has been conclud-

ed. *Radio Distributing, id.; Templeton v. Sam Klain & Son, Inc.* (1981), Ind., 425 N.E.2d 89. At that time Mock may properly present his position concerning what constitutes a reasonable fee.

We accordingly affirm the judgment, but remand the case for hearing on appellate attorney's fees.

YOUNG and NEAL, JJ., concur.

---

3. The Seiberts assert that Mock failed to provide two essential elements necessary for ascertaining the amount of attorney fees to be awarded: (1) the skill needed to perform the services properly and (2) the difficulty of the questions presented at trial. These two criteria are used to increase the fee award for complex cases. Judge Chipman stated in *U.S. Aircraft Financing, Inc. v. Jankovich* (1980), Ind.App., 407 N.E.2d 287 at 296, "Further, if it is felt the legal work performed justifies a higher than normal fee, there is no reason why testimony regarding the difficulty or complexity of a case should not be introduced."

4. In making that statement, the writer must acknowledge his dissent in *Parrish v. Terre Haute Savings Bank* (1982), Ind.App., 438 N.E.2d 1, 4–6. That dissent was based upon the legal principle of merger and long-standing precedent supporting that doctrine.

However, in the light of calm reflection, I now agree the better rule recognizes the parties' equitable intent in such cases to indemnify and make whole that party injured by breach of the contract. In that light, the parties to such a contract certainly contemplate attorney fees on appeal.