## Mandel v. The Bell Telephone Company
## of Pennsylvania

*Jerome Taylor*, for plaintiff.

*Richard J. Van Roden* and *Dolores B. Sesso,* for defendant.

CAVANAUGH, J., August 8, 1969.—This matter is before the court on the motion of defendant, the Bell Telephone Company of Pennsylvania (Bell), for summary judgment pursuant to the provisions of Pa. R. C. P. 1035. Stated simply, the complaint alleges that plaintiff, Samuel Mandel, M.D., contracted with Bell for telephone service, and that Bell breached the contract by listing plaintiff in the "Yellow Pages" under the heading "Physicians and Surgeons—Osteopathic, D.O." whereas he should have been listed "Physicians and Surgeons—Medical, M.D.".

Bell's answer admits that plaintiff was listed as an osteopath, but in new matter alleges that any claim for damages as a result of an erroneous listing is gov-

erned by its tariffs on file with the Public Utility Commission (PUC) limiting its damages to one half the local service charge applicable to the subscriber's service charge over the life of the directory. The limitation of liability provision, attached to the instant motion, provides as follows:

"The Telephone Company, except as provided herein, shall not be liable for damage claimed on account of errors in or omissions from its directories nor for the result of the publication of such errors in the directory, nor will the Telephone Company be a party to controversies arising between customers or others as a result of listings published in its directories. Claims for damages on account of interruptions to service due to errors in or omissions from directory listings will be limited to an amount equivalent to the proportionate charge for that part of the customer's service which is impaired, but not to exceed one-half the local service charges for the service items affected for the period from the date of issuance of the directory in which the mistake occurred to the date of issuance of a new directory containing the proper listing."

Bell argues that the limitation provision of the tariff becomes part of plaintiff's contract by reason of the general regulations contained in Bell's tariffs on file with the PUC which provide as follows:

"5. CONTRACTS FOR SERVICE

"*Upon the acceptance of an application for service, all the applicable provisions in the Telephone Company's tariffs lawfully on file become the contract between the customer and the Telephone Company. . . .*"

The tariffs are a matter of public record under section 302 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1142. Both parties agree that the only issue presented is the validity of the tariff limiting Bell's liability.

Before deciding the validity of the limitation, it must first be determined whether a *listing* in the Yellow Pages (no advertisement is here involved) by a phone subscriber is subject to PUC jurisdiction. With respect to that issue, Steerman v. Bell Telephone Company of Pennsylvania, 24 Pa. P.U.C. 316 (1943), holds that ". . . the undertaking of a telephone company to publish under a descriptive heading in its classified directory the names of all business and professional subscribers, who desire it, 'is a dedication to that part of the telephone using public', and to such limited extent constitutes a public service." See Felix v. Pennsylvania Public Utility Commission, 187 Pa. Superior Ct. 578, 582 (1958), quoting and approving Steerman. Accordingly, plaintiff's listing in the Yellow Pages is part of Bell's public service and subject to PUC jurisdiction. Felix is not inconsistent with Steerman, as it only holds that the listing of a *nonphone subscriber* in the Yellow Pages is a private contract and not subject to Pa. PUC jurisdiction. See also Bell Telephone Company of Pennsylvania v. Sorkin, 30 D. & C. 2d 510 (1963), which assumes, without deciding, that a subscriber's listing in the Yellow Pages is part of the utility's public service and subject to PUC jurisdiction. However, if a subscriber's listing in the Yellow Pages were determined to be a private service by the utility as a nonsubscriber's listing is under Felix, I am inclined to think that the limitation would be invalid as (1) not binding because the PUC was without jurisdiction to approve it, and (2) void as against public policy. See Sorkin and Restatement, Contracts §575.

With respect to the validity of the limitation, Newsham v. United Telephone Company of Pennsylvania, 2 D. & C. 2d 312 (1954), and Bell Telephone Company of Pennsylvania v. Sorkin, supra., can fairly be cited for the proposition that the limitation is invalid. Conversely, Triangle Furniture & Appliance Inc. v. Bell

Telephone Company, 109 Pitts. L.J. 205 (1961), and Kilbourne v. Denver and Ephrata T. & T. Co., 58 Lanc. 11 (1961), support the proposition that the limitation is valid. See also Shapiro v. Bell Tel., 92 Pitts. L. J. 10 (1944), which states:

"We consider the regulation permitting the utility to contract against liability for its own negligence, no matter how substantial the loss to the helpless subscriber, to be unreasonable and against public policy, and if the case were here presented for the first time we would so hold. However, the contrary rule has been well established by the considered opinions of the higher tribunals, all of which must be respected and the regulation upheld accordingly."

While there is general language in Melnick v. National Air Lines, 189 Pa. Superior Ct. 316 (1959), and Cray v. Pennsylvania Greyhound Lines, Inc., 177 Pa. Superior Ct. 275 (1955), tending to support Bell's position, the parties have not cited, nor has the court's own research disclosed, any Pennsylvania appellate court decision directly on point.

There is a thorough annotation in 92 A.L.R. 2d 917 (1963) — Liability of telephone company for mistakes or omissions in its directory — containing most of the appellate decisions on point. Apparently, the leading case in the area is McTighe v. New England Telephone & Telegraph Company, 216 F. 2d 26 (C. A. 2, 1954), where the issue was the validity of the utility's limitation of liability filed as part of its tariff for the alphabetical directory. The court observed that Vermont law required all utilities to file their rate schedules and, as a part thereof, any rule or regulation that may affect the rate.[1] Thereafter, upon the approval

---

[1] Apparently under Vermont Public Utility Code, contracts for the classified directory or Yellow Pages are completely a matter of private contract and not required to be filed with the utility commission. See 216 F. 2d, at p. 27. This procedure is inconsistent with Pennsylvania law under Steerman and Felix.

of the rate system including the limitation of liability clause by the commission, the validity of the limitation clause was immune from attack in the courts.[2]

"The reasonableness of these rules and regulations is determined by the Public Service Commission in the exercise of the power delegated to it by the legislature. Accordingly, the 'contract' with reference to the alphabetical directory, having been sanctioned as reasonable by the Public Service Commission in the exercise of its regulatory functions, is no longer one in connection with which the courts have the power to examine into the question of reasonableness on a collateral attack": 216 F. 2d, at p. 28.

In upholding the validity of the utility's limitation, the McTighe panel (opinion by Judge Medina, joined by Judges Swan and [Mr. Justice] Harlan) relied extensively upon Western Union Telegraph Co. v. Esteve Brothers & Company, 256 U.S. 566, 41 S. Ct. 584, 65 L. Ed. 1094 (1924). In that case, the Supreme Court upheld the validity of a telegraph company's limitation of liability contained in their tariff on the theory that as Federal statutory law required all telegrams of a particular classification to be sent at a uniform rate which the telegraph company was not free to change, then that rate represented "the whole duty and the whole liability of the company."

"The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the amount charged for the service rendered.

"The act of 1910 introduced a new principle into the legal relations of the telegraph companies with their patrons which dominated and modified the prin-

---

[2] The alphabetical directory was under the jurisdiction of the Vermont Public Service Commission, and thus the utility was required to file the limitation clause with the commission for approval. See 216 F. 2d, at p. 28.

ciples previously governing them. Before the act the companies had a common law liability from which they might or might not extricate themselves according to views of policy prevailing in the several states. Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed. Assent to the terms of the rate was rendered immaterial, because when the rate is used, dissent is without effect": 256 U.S. 566 at 571, 572.

See also Western Union Telegraph Company v. Priester, 276 U.S. 252 (1928), which extends Esteve to situations where the telegraph company's negligence is alleged to be gross.

Numerous State courts have followed McTighe and the Estreve rationale to uphold the validity of a telephone company's limitation of liability contained in their tariffs and regulations. See, e.g., Riaboff v. Pacific Tel., 39 Cal. App. 2d 775, 102 P.2d 465 (1940); Correll v. Ohio Bell Tel., 63 Ohio App. 491, 27 N.E. 2d 173 (1939); Wilkinson v. New England Tel., 327 Mass. 132, 97 N.E. 2d 413 (1951); Bird v. Chesapeake and Potomac Tel., 185 A. 2d 917 (Mun. Ct. App., Dist. Col., 1962); Advance Service, Inc. v. General Tel. Co., 187 So. 2d 660 (Fla. App., 1966); Wilson v. Southern Bell Tel., 194 So. 2d 739 (La. App., 1967); Federal Building Service v. Mountain States Tel., 76 N.M. 524, 417 P 2d 24, and Pride v. Southern Bell Tel. 244 S.C. 615, 138 S.E. 2d 155 (1964). The A.L.R. article states the "great majority of cases" have held the limitation to

be "entirely effective," and recovery beyond the limitation is "rare indeed": 92 A.L.R. 2d, at pages 935, 936. Moreover, Pennsylvania appellate courts have approved a telegraph company's exclusion of liability in transmitting an unrepeated message. See Passmore v. Western Union Telegraph Co., 78 Pa. 238 (1875); Western Union Tel. Co. v. C. P. Stevenson, 128 Pa. 442 (1889).

Accordingly, as the vast majority of State courts have upheld the type of limitation of liability used by Bell here, and following the reasoning of Esteve and McTighe that the utility's tariff when approved by the PUC contains the whole of its duty and its liability so that it is not free to change its uniform rate, this court is of the opinion the Bell's limitation of liability is valid.

Paragraph 11 of Bell's motion of summary judgment pleads that the extent of their liability is $80.45, and as plaintiff has filed no answer denying the allegation, the court will treat it as correct. Accordingly, summary judgment is entered against the Bell Telephone Company of Pennsylvania for $80.45.