No. 12293

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA ex rel THE MOUNTAIN STATES TELEPHONE
AND TELEGRAPH COMPANY,

Relator,

-vs-

THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT OF THE STATE
OF MONTANA, IN AND FOR THE COUNTY OF SILVER BOW, THE HONORABLE
JAMES D. FREEBOURN, JUDGE PRESIDING,

Respondents.

---

Original Proceedings.

Counsel of Record:

For Appellant:

Hughes, Bennett and Cain, Helena, Montana 59601
Alan Cain argued, Helena, Montana 59601.

For Respondent:

S. O. Meyers argued, Butte, Montana 59701.
Poore, McKenzie and Roth, Butte, Montana 59701.
James A. Poore III argued, Butte, Montana 59701.

---

Submitted: June 21, 1972

Decided: NOV 1 6 1972

Filed: NOV 1 6 1972

Thomas J. Kearney

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an original proceeding wherein relator, The Mountain States Telephone and Telegraph Company (hereinafter referred to as Mountain States), petitioned this Court for a writ of supervisory control directed to and requiring the respondent district court to grant Mountain States' motion for summary judgment in a civil action entitled: "Mary Jane Davidson and John G. Davidson, Plaintiffs, vs. The Mountain States Telephone and Telegraph Company, Defendant." Relator asked this Court to review the record of the district court in this action and its order denying relator summary judgment. The civil action seeks damages for omission of plaintiffs' listing and advertisement in defendant's telephone directory and its yellow pages.

This Court assumed jurisdiction, briefs were filed and oral argument had.

Plaintiffs Mary Jane Davidson and John G. Davidson assumed ownership and management of an existing ski shop in Butte. As a part of such ownership and management, they subscribed to a business telephone from Mountain States. In February 1971, plaintiffs were contacted by Mountain States and at that time they requested, in writing, that certain advertising be placed in the yellow pages, and further requested their listing in the white pages be in bold faced print.

In March 1971, Mountain States acknowledged the order and indicated the listings would be in the next issue of the telephone directory. Neither the "white pages" listing nor the "yellow pages" listing and advertisement appeared in the spring, 1971, Butte telephone directory.

Suit was brought by plaintiffs alleging negligent omission on the part of Mountain States, resulting in loss of profits and other damages to plaintiffs. Mountain States admitted the omission, and admitted the listing should have been in both the white pages and yellow pages of its directory.

In their complaint, plaintiffs demanded damages in the amount of $7,990 for "actual" damage to their business and $2,000 punitive damages. The punitive damage claim was stricken from the complaint by the respondent court on motion of Mountain States.

At the time of the pretrial conference Mountain States confessed judgment, however only in an amount limited by provisions which it contends are controlling. Mountain States then moved for summary judgment to enforce those limitations. The district court refused to grant summary judgment, and Mountain States now applies to this Court for an appropriate writ.

Mountain States contends that liability for omission in the white pages of its directory is limited by the limitation of liability contained in the General Exchange Tariff, published by the Montana Public Service Commission, and which states:

"3. The Telephone Company's liability arising from errors in or omissions of directory listings shall be limited to and satisfied by a refund not exceeding the amount of the charges for such of the subscriber's service as is affected during the period covered by the directory in which the error or omission occurs."

Mountain States contends that under section 70-101, et.seq., R.C.M. 1947, it is required to file a schedule of its rates, tariffs, rules and regulations with the Montana Public Service Commission; that the Commission has complete authority to regulate all activities of the utility and pursuant to this authority requires Mountain States to publish a directory listing the names, addresses and phone numbers of its subscribers.

It further contends errors and omissions in listing are inevitable, despite the most exacting proofreading standards. Even if decreased business or sales can be shown by a business whose listing has been omitted, the problem of causation when the offended subscriber is a business enterprise would be a problem for courts. Businesses suffer fluctuations from year to year, mostly unexplained, making the determination of damage a complex problem. In addition, the telephone company's exposure to liability

- 3 -

is one factor which determines the rates the company is permitted by the Public Service Commission to charge. If the company must litigate every case of error in, or omission of a listing, the telephone rates must necessarily rise to reflect this increase in costs. All this is in the area of its public service, properly regulated by the Public Service Commission.

Plaintiffs strongly question the authority of the Public Service Commission to act in the field of limitation of liability in this manner, as beyond its authority and an unconstitutional delegation of legislative powers, (Art.IV, Sec. 1, Montana Constitution), if the legislature has such power. Plaintiffs maintain the entire subject matter is governed by the Montana statutes on damages, sections 17-301 and 17-401, R.C.M. 1947.

Plaintiffs cite Great Northern Utilities Co. v. Public Service Comm., 88 Mont. 180, 293 P. 294, (also cited by Mountain States as authority to regulate rates), as a demonstration of the fact that the authority to regulate rates in that case had to be "inferred" from the statute. Therefore, they contend, the statutes never contemplated permitting the extension of authority of the Public Service Commission to limit liability for error or omission.

In a sense plaintiffs are correct in that in Great Northern Utilities the Court did rule that the statutes enacted in relation to the Public Service Commission did authorize rate making authority, but this was not as arbitrary or confined as the term "inferred" might imply. Great Northern Utilities was a lengthy in depth discussion by Judge Leiper on utilities, the monopolistic aspect, public interest, statutory construction, legislative intent and much more. The Court either spoke directly or affirmed langauge from other jurisdictions and the federal courts in many areas. In regard to public utilities generally, the Court discussed and approved the principle of private property devoted to public use, as it differs from property used in business generally. This concept is based on the principle that property

- 4 -

devoted to public use or a use in which the public has an interest, grants to the public an interest in the use which can be controlled by the public for the common good. This is done through the Public Service Commission in Montana and the Court further held that the Commission is required not only to regulate charges, but has a duty to see to reasonable service being rendered, among other regulatory functions.

This places the utility in a class of corporations strictly regulated in its rights and privileges and it therefore should be regulated, at least to the extent of its static known exposure to liabilities such as its directory omissions and errors when this function is required by the Commission, and at the very least indirectly involved in rate and service considerations.

The language of Great Northern Utilities is broad enough to include this function by the Commission. The Court there further observed that the utility and the public were adequately protected under the system of regulated monopoly control constitutionally, in as much as all permitted regulations or rates must be reasonable.

In a review of the cases cited to this Court, the majority have held in fact situations similar to those here that the limitation contained in the General Exchange Tariff is reasonable and binding on the subscriber. Bird v. Chesapeake and Potomac Telephone Company, (D.C.App.), 185 A.2d 917; Warner v. Southwestern Bell Telephone Company, (Mo.1968), 428 S.W.2d 596; 92 ALR2d 917. We agree.

The second issue here is the extent of Mountain States' liability for failing to list plaintiffs in the yellow pages. The yellow pages advertising is outside Mountain States' area of public service, and is not under the authority of the Public Service Commission, but rather is governed by the rules of law applicable to private contracts.

Here we are concerned with the provision in the advertising contract which limits the liability of Mountain States for the

omission of classified advertising. It provides:

> "In case of error in the advertisement as published or in case of the omission of all or any part of the advertisement from publication, the Telephone Company's liability, if any, shall be limited to a pro rata abatement of the charge paid to the Telephone Company for such advertisement in the same proportion that the error or omission reduces, if at all, the value of the entire advertisement, but in no event shall such liability exceed the amount payable to the Telephone Company for said advertisement during the service life of the directory in which the error or omission occurs."

We do not agree with the contention that this limitation falls under section 13-804, R.C.M. 1947, "Contracts fixing damages void", but rather provides for a maximum recovery as will be discussed later in this opinion. Williston on Contracts, 3d Ed., V. 5 §781-A.

The majority of the cases cited to us have upheld the provision that we have under consideration and under similar circumstances. A leading decision is McTighe v. New England Telephone & Telegraph Co., 216 F.2d 26, 28. The jurisdictions of South Carolina, Ohio, New Mexico, Florida, California, Missouri, Maryland, Texas and Louisiana are generally in accord with the principle that it is within the utility's domain of private contract and there are many alternate methods of advertising; that the error or omission is generally a simple mistake not amounting to gross negligence and the rationale in these jurisdictions ranges all the way from the determination that the provision is a reasonable restriction to the principle that lacking fraud, willful, or wanton misconduct, the parties are free to contract and reasonableness is not an issue. As Judge Medina stated in McTighe:

> "If there be some disparity in the bargaining power of the contracting parties it is not more than may be found generally to exist * * *."

Plaintiffs have cited Allen v. Michigan Bell Telephone Company, 18 Mich.App. 632, 171 N.W.2d 689, to the contrary as their principal authority and furnished a Colorado and Oregon citation by permission after oral argument.

The Michigan Court criticizes other jurisdictions holding the exculpatory paragraph in the advertising contract valid for having not recognized the problem of unconscionability, meaning the absence of a meaningful choice on the part of one party (subscriber) and the contract terms unreasonably favoring the other (telephone company). Further, there being no competing alternate, except at a prohibitive disproportionate cost.

Plaintiffs' argument is based on the Michigan decision and the monopolistic quality of the defendant utility company and, in addition, points out a resulting general nationwide deterioration of telephone service.

As plaintiffs point out, defendant is a public utility monopoly. Since the utility corporation has devoted its assets to a public service, it is a permitted legal monopoly to be regulated by the public through its elected officials. Great Northern Utilities Co. v. Public Service Commission, 88 Mont. 180, 293 P. 294. In this respect, it is set apart in the family of corporations from the profit corporation which is not regulated and can and does deal in the market place. Even though the yellow pages advertising is not part of the utility's public function, the utility is not in the "market place" advertising business per se and if it offers this service at all it is necessarily, at least in fact, a part of its directory function and subject to some of the same disabilities in relation to errors and omissions as is the white pages directory.

In this area, once an error or omission is made in the advertising there is no opportunity to correct this problem, any more than in the white listing, until the next publication. On the other hand "market place" advertisers can correct or mitigate in the next issue or broadcast. The same problems attendant to damages exist here and if they could be accurately ascertainable they could conceivably run for a considerable period of time, with no opportunity to mitigate or abate.

The monopolistic character of the yellow pages which the Michigan Court decries as resulting in no meaningful choice or

- 7 -

or no competing alternate, except at a prohibitive disproportionate cost, is not exactly, as has been discussed, a one way street, particularly when one considers further that by the Michigan Court's own definition the service is desirable and at a more reasonable cost than "market place" advertising. It necessarily follows that in some cases it may appear harsh at times but not unconscionable. The mere fact of claimed unequal bargaining position does not render it so in today's world of commerce, where situations of this nature are not uncommon. McAlear v. Saint Paul Insurance Companies, _158 Mont._452_, 493 P.2d 331, 29 St. Rep. 73.

Plaintiffs claim that permitting this kind of limitation could be extended to limitations on recovery for personal injuries caused by the utility. The problem of an extension of this kind and also the acceptance of limitations of liability generally is well stated in some of the most modern enactments contained in the Uniform Commercial Code. In subsection (3) of section 87A-2-719, R.C.M. 1947, the section of Montana's Uniform Commercial Code wherein limitation of recovery by contract is provided for, it is stated:

> "* * * Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." (Emphasis supplied).

Without a demonstration of bad faith, fraud, or willful or wanton conduct by Mountain States, a limitation of liability for errors and omissions in its advertising expressed in a written and signed contract is reasonable and nowise against public policy and it is within the power of the company and subscribers to its directory to make such contracts and they become a valid and binding limitation.

The abstracts of the two cases submitted after argument are interesting but not helpful on our principal point. The Oregon case, Macca v. General Telephone Company of the Northwest, Inc., Oregon Superior Court # 9849, is a different situation

involving two phone companies and an invasion of privacy or harassment complaint resulting from a number switch which does not seem to turn on a contract limitation of yellow pages advertising.

The Colorado case, Irish v. The Mountain States Telephone & Telegraph Company, Colorado Court of Appeals # 71-326, involves the failure to include a dentist's listing in the yellow pages section, although it appeared in the white pages. That court's discussion is confined to the proof of damages and proximate cause and no mention is made of any contract limitation on damages.

It does not appear that either of the two cases submitted by plaintiffs after argument reaches our problem and it is clear that insofar as damages are concerned those two cases are unique situations in which damages could be much more accurately ascertained than in the ordinary commercial enterprise.

The order denying summary judgment is reversed with instructions to enter judgment within the limitations of the liability expressed in the General Exchange Tariff and the yellow pages advertising contract.

Associate Justice

We Concur:

_____
Chief Justice

_____

_____
Associate Justice