**ROBINSON INSURANCE & REAL ESTATE INC., Plaintiff,**

v.

**SOUTHWESTERN BELL TELEPHONE CO., Defendant.**

Civ. No. FS–71–C–83.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Aug. 27, 1973.

**308**

Robert T. Dawson of Hardin, Jesson & Dawson, Fort Smith, Ark., and Ralph Robinson, Van Buren, Ark., for plaintiff.

Douglas O. Smith, Jr., of Warner, Warner, Ragon & Smith, Fort Smith, Ark., and Donald K. King and Ronald T. LeMay, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

PAUL X WILLIAMS, District Judge.

Plaintiff is an Arkansas corporation. Prior to May of 1969, Earl Robinson had been in the insurance business for approximately 20 years in Van Buren,

Arkansas. He had also been in the real estate business for most of this period. In May of 1969, Robinson and his associate, Robert Bell, incorporated under the name of Robinson Insurance and Real Estate, Inc.

Defendant, Southwestern Bell Telephone Co., a Missouri corporation, is engaged in the provision of local and long distance telecommunications service in Arkansas and other states. In connection with its business it publishes telephone directories for its service areas. These directories consist of two sections, the alphabetical section or white pages, and the classified section or Yellow Pages. Publication of the alphabetical section is mandated by the Arkansas Public Service Commission. There is no similar requirement regarding the Yellow Pages. Defendant, with respect to this activity, is engaged in a private business enterprise as opposed to a public service offering. Associated Mechanical Contractors of Ark. v. Ark. La. Gas Co., 225 Ark. 424, 283 S.W.2d 123 (1955).

This is a Breach of Contract suit to recover for loss of profits allegedly resulting from defendant's failure to publish certain listings and advertising plaintiff contracted for in defendant's 1970 Fort Smith-Van Buren, Arkansas, telephone directory.

On March 19, 1970, Mr. Robert Bell, acting for plaintiff, and Mr. Tom Ogden, defendant's directory representative, entered into a written contract for Yellow Page advertising and bold face listings in the white pages. The items ordered included a two inch Yellow Page ad, two Yellow Page trade-mark listings, two white page bold face listings and a Yellow Page bold face listing. The total charges for the items amounted to $14.-40 per month or a total of $172.80 for the 12 month life of the directory.

In June 1970 when the Fort Smith-Van Buren directory was distributed, plaintiff discovered that its advertising was omitted and thereafter filed this action. In its answer, defendant admitted

plaintiff's advertising was omitted. Defendant further admitted liability up to the sum of $172.80 and moved to dismiss plaintiff's action for all sums above that amount based on the following exculpatory clause contained in the parties' contract:

"4. The applicant agrees that the Telephone Company shall not be liable for errors or omissions in directory advertising beyond the amount paid for the item or items omitted, or in which errors occur, for the issue life of the directory involved."

Plaintiff then amended its complaint alleging that the omissions were the result of defendant's intentional wrongdoing or "gross negligence." Defendant in answering plaintiff's amended complaint and in its trial briefs agrees that the limitation clause contained in the parties' contract does not afford protection in the case of intentional wrongdoing or perhaps gross negligence but denies that such occurred.

Plaintiff's position at trial and in its trial brief is a three-fold one. First, plaintiff contends the limitation clause is unenforceable as being contrary to public policy or in modern parlance, "unconscionable." Secondly, it contends that ordinary negligence alone will overcome the limitation or, in the alternative, that gross misconduct in the form of wilful and wanton misconduct or gross negligence has been proved. Thirdly, plaintiff contends that the clause is an unenforceable liquidated damages clause because the limit set is grossly disproportionate to the probable actual damages resulting from the breach. Plaintiff's contentions will be considered *seriatim.*

Plaintiff contends that the limitation clause is unconscionable and should be disregarded since it is contained in a form contract entered into by parties in disparate bargaining positions. In support of this contention, plaintiff cites Allen v. Michigan Tel. Co., 18 Mich.App. 632, 171 N.W.2d 689 (1969). The Michigan appellate court in Allen held exculpatory language similar to that contained in the instant contract to be unconscionable and, consequently, unenforceable. The Michigan court relied upon what it perceived to be the monopolistic character of Yellow Pages and the disparity of bargaining power between the parties to the contract.

The unconscionability argument is not a novel one in telephone directory cases. The first reported case considering such an argument is McTighe v. New England Tel. & Tel. Co., 216 F.2d 26 (2d Cir. 1954). In *McTighe*, Judge Medina speaking for the Second Circuit, commented on the unconscionability argument as follows at page 28:

"But the principle which enables courts to strike down and condemn clauses affecting the performance by the company of its functions as a public utility is limited to the area in which the public services are rendered and has no application whatever to the domain in which the public utility may freely contract in its private capacity. The obtaining of the services of the public utility by way of transportation or communications or providing gas or electricity is quite apart from the leases, advertising contracts and a host of other miscellaneous agreements commonly made by members of the public with public utility companies. If there be some disparity in the bargaining power of the contracting parties it is no more than may be found generally to exist; and the courts follow the general rule that the parties are free to contract according to their own judgment and the reasonableness of their engagements will not be entered into."

The same argument was advanced in Georges v. Pacific Tel. & Tel. Co., 184 F.Supp. 571 (U.S.D.C.Or.1960) to which the Court responded:

"Now, what can this Court say the Oregon Supreme Court would do if they were dealing not with a business affected by the public interest but was merely engaging in its own pri-

vate capacity? Would the Oregon Supreme Court say that notwithstanding the firm and universal rule of private contracts that parties are not bound by them? That the telephone companies hold a virtual monopoly and, therefore, any member of the public wishing to have any service from them, even though it was in their private capacity, must take it or leave it, and that such is against public policy? I do not think the Oregon Supreme Court would so overrule the basic concepts of contract law that are reiterated so plainly by the Second Circuit in McTighe.

"I would anticipate that the Oregon Supreme Court would say that if such be an evil it is a matter for the Legislature and not for the judiciary. So, it is the conclusion that the contract involved in this case is merely a contract on behalf of the plaintiff's business for advertising space in the Telephone Company's directory, particularly the yellow pages thereof, which is nothing more than a business venture engaged upon by the telephone people in their own private capacity. I am forced to follow the rule of the Second Circuit case." 184 F.Supp. 571, 578.

*Allen* represents a departure from the majority view recognizing freedom to contract, is based upon faulty notions of the public interest, and is not in keeping with commercial realities. This Court prefers to follow *McTighe* and *Georges*. Yellow Pages is but one form of advertising. It is in no way unique or monopolistic. Numerous alternative advertising forums exist. Moreover, the disparity of bargaining power claimed to exist in the instant case is no more than is generally found to exist in commercial transactions. The Court perceives its responsibility to strike down such a clause to arise only upon a clear showing of palpable unfair and overreaching language or conduct on the part of the defendant. The present clause represents nothing more than an application of a basic concept of contract law which recognizes the propriety of parties contracting to limit their liability. This viewpoint was recently adopted by the Supreme Court of Montana in the case of State ex rel. Mountain States Tel. & Tel. Co. v. District Court, 503 P.2d 528 (Mont.1972). Therein, the Court stated:

> The monopolistic character of the yellow pages which the Michigan Court (Allen) decries as resulting in no meaningful choice or no competing alternate, except at a prohibitive disproportionate cost, is not exactly, as has been discussed, a one way street, particularly when one considers further that by the Michigan Court's own definition the service is desirable and at a more reasonable cost than "market place" advertising. It necessarily follows that in some cases it may appear harsh at times but not unconscionable. The mere fact of claimed unequal bargaining position does not render it so in today's world of commerce, where situations of this nature are not uncommon. McAlear v. Saint Paul Insurance Companies, 158 Mont. 452, 493 P.2d 331

> \* \* \* \* \* \*

> Without a demonstration of bad faith, fraud, or willful or wanton conduct by Mountain States, a limitation of liability for errors and omissions in its advertising expressed in a written and signed contract is reasonable and nowise against public policy and it is within the power of the company and subscribers to its directory to make such contracts and they become a valid and binding limitation. 503 P.2d 530, 531

This precise issue has not been decided by the Arkansas Supreme Court. However, Arkansas law respecting the propriety of judicial interference with private contractual obligations on public policy grounds is well settled and clearly stated in the case of Sirman v. Sloss Realty Co., 198 Ark. 534, 129 S.W.2d 602

(1939), wherein the Arkansas Court stated *inter alia:*

"The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt."

The instant case clearly does not meet the exacting standard set by *Sirman* for justifying judicial abrogation of such clauses.

■ The Uniform Commercial Code provision relied upon by plaintiff (*i. e.,* Ark.Stats.Ann. 85–2–106) is specifically inapplicable since it applies only to contracts for "the present or future sale of goods." The U.C.C. was legislatively enacted to cope with specific commercial needs. Its provisions should not be extended outside the context of such commercial needs. Consequently, we conclude that the clause contained in plaintiff's contract is not unconscionable, but rather, it is a valid limitation of liability within the universally accepted and applied rule permitting parties to freely contract concerning their responsibilities arising from a breach. 57 Am.Jur.2d Negligence § 23.

■ With respect to plaintiff's second argument, the authorities are in accord that ordinary negligence is not sufficient to overcome a telephone directory advertising contract limitation like the one in the instant case.* The Oklahoma Federal District Court's decision in Wheeler Stuckey, Inc. v. Southwestern Bell Telephone Company, 279 F.Supp. 712 at 714 (U.S.D.C.Okl.1967) is representative of the holdings in the 14 states that have decided this issue.

"The Court is further of the opinion that the telephone company may, by contractual stipulation, or by general exchange tariff, rules and regulations applying to all customer's contracts, which are on file and approved by the Oklahoma Corporation Commission limit the amount of its liability for injuries resulting from omissions and mistakes, both in the listings and the advertising portions of its telephone directory, so long as it does not seek immunity from gross negligence or wilful misconduct. However, mere inadvertent errors, even if resulting from the carelessness or negligence of an employee or agent is insufficient to support gross negligence."

■ As indicated in the decisions previously quoted, the contract limitation provision relied on by defendant cannot stand in the face of wilful and wanton misconduct or gross negligence. Gross negligence is the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result. Spence v. Vaught, 236 Ark. 509, 367 S.W.2d 238 (1963). Wilful and wanton misconduct goes beyond gross negligence in that the party must be aware of the fact that his conduct will probably result in injury. The element of willfulness is absent in gross negligence. Froman v. J. R. Kelley

---

* *California*: Riaboff v. Pacific Tel. & Tel. Co., 39 Cal.App.2d Supp. 775, 102 P.2d 465 (1940); Davidian v. Pacific Tel. & Tel. Co., 16 Cal.App.3d 750, 94 Cal.Rptr. 337 (1970); *Maryland*: Baird v. Chesapeake & Pot. Tel. Co., 208 Md. 245, 117 A.2d 873 (1955); *Oregon*: Georges v. Pacific Tel. & Tel. Co., 184 F.Supp. 571 (D.C.1960); *Tennessee*: Smith v. So. Bell Tel. & Tel. Co., 51 Tenn. App. 146, 364 S.W.2d 952 (1962); *Texas*: Wade v. Southwestern Bell Tel. Co., 352 S. W.2d 460 (Tex.Civ.App.1961); *New York*: Hamilton Emp. Service v. New York Tel. Co., 253 N.Y. 468, 171 N.E. 710 (1930); *Florida*: Neering v. So. Bell Tel. & Tel. Co., 169 F.Supp. 133 (D.C.1958); *Missouri*: Warner v. Southwestern Bell Tel. Co., 428 S.W.2d 596 (Mo.1969); *Ohio*: Cunha v. Ohio Bell Tel. Co., 26 Ohio Misc. 267, 55 O. O.2d 430, 271 N.E.2d 321 (1970); *Montana*: State ex rel. Mountain States Tel. & Tel. Co. v. District Court, Mont., 503 P.2d 526 (1972); *Oklahoma*: Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co., 279 F.Supp. 712 (1967); *Vermont*: McTighe v. New England Tel. & Tel. Co., 216 F.2d 26 (2nd Cir. 1954); *Louisiana*: Wilson v. So. Bell Tel. & Tel. Co., 194 So.2d 739 (La.Ct.App. 1967).

Stave & Heading Co., 196 Ark. 808, 120 S.W.2d 164 (1938).

The evidence shows that subsequent to execution of the contract, plaintiff changed its telephone number to obtain an additional line. Defendant's business office issued an order to change the number and transfer the advertising from the old number to the new number. This order carried the designation "resume advertising" which was the indication to transfer the advertisements and listings to the new number. One of defendant's clerical employees in its directory operations office inadvertently missed the notation and caused the items to be cancelled along with the old number.

Plaintiff attempted to show that defendant's administrative procedures were so deficient as to constitute gross negligence. However, plaintiff failed to offer evidence of any standard by which defendant's procedures could be tested. Defendant, on the other hand, offered evidence to show that its accuracy in the publication of its Fort Smith-Van Buren directory is comparable to its statewide performance and further, that its statewide accuracy percentage exceeded the five-state Company average and, in fact, ranked first much of the time.

Plaintiff also introduced evidence of an omission of a bold face listing in the 1969 directory and an overbilling for advertising these errors and the omission that occurred in the 1970 directory. Without establishing such a relationship, they must be viewed as completely separate incidents and as such lacking in materiality.

After weighing the evidence the Court concludes and finds that the directory omission in this case was caused by simple clerical error, not constituting gross negligence or wilful or wanton misconduct. In view of this finding it is unnecessary for this Court to decide whether under Arkansas law, as argued by defendant, wilful and wanton misconduct rather than gross negligence is necessary.

Plaintiff's final argument is that the clause constitutes a liquidation of damages provision which is ineffectual because the specified limit is grossly disproportionate to the probable actual damages. The distinction between limitation of liability clauses and liquidated damages clauses is clearly established. Williston discusses the distinction in the following terms:

"The limitation of liability is neither a penalty in that it does not normally operate *in torrorem* to induct proper performance, nor is it of the nature of liquidated damages since it does not purport to be a pre-estimate of probable damages resulting from a breach. Sometimes the sum so fixed is regarded by the parties as an outside estimate of what would otherwise be the probable liability, but in determining the amount of recovery it is immaterial whether this is the case or not." Williston on Contracts § 780A at 710.

We do not mean to imply that the subject clause would be unenforceable if construed to be a liquidated damages clause. However, even a cursory examination of the negative language and the use of the word "beyond" in the clause reveals that it is a limitation provision, and, therefore, enforceable irrespective of the relationship between the limit and the actual probable damage. See Western Union Tel. Co. v. Nester, 309 U.S. 582, 60 S.Ct. 796, 84 L.Ed. 960 (1940).

Based on the above, this Court concludes that the limitation clause contained in the parties' contract is valid and that defendant's liability should be limited to $172.80 in accordance therewith. Having determined that the subject limitation is valid, it is unnecessary for this Court to reach the question of additional damages.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing Memorandum Opinion as authorized by Rule 52(a) F.R.Civ.P. A proper judgment will be entered accordingly. Each party pay his own cost.