THE GAS HOUSE, INC. v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY

No. 7518SC297

(Filed 6 August 1975)

Contracts § 10; Telephone and Telegraph Companies § 4— mistakes in Yellow Pages — contract limiting liability — public policy

 A contract provision limiting a telephone company's liability for errors or omissions in an advertisement in the Yellow Pages of a telephone directory to the cost of the advertisement is unreasonable and

the direct consequence of a real disparity in bargaining power and will not be enforced by the courts as a matter of public policy.

Judge PARKER dissenting.

APPEAL by plaintiff from *Collier, Judge.* Judgment entered 21 January 1975 in Superior Court, GUILFORD County. Heard in the Court of Appeals 11 June 1975.

*Smith, Carrington, Patterson, Follin & Curtis, by Charles A. Lloyd, for the plaintiff-appellant, The Gas House, Inc.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Edward C. Winslow III, and C. T. Leonard, Jr., for the defendant-appellee, Southern Bell Telephone and Telegraph Company.*

BROCK, Chief Judge.

The question presented by this appeal is whether an advertiser can recover from a telephone company for an error or omission in the yellow pages of a telephone directory when the contract entered into by the parties limits the telephone company's liability for errors or omissions to an amount equal to the cost of the advertisement. Although the question is novel in this jurisdiction, the jurisdictions of California, Florida, Louisiana, Maryland, Missouri, Montana, New Mexico, and Ohio, and many federal courts, have held that the advertiser cannot recover damages beyond the cost of the advertisement because of the limitation of liability. We decline to align ourselves with those jurisdictions, and we hold that plaintiff-advertiser may recover irrespective of the limitation of liability in the contract. This result is dictated by our conclusion that the clause limiting the telephone company's liability is unreasonable and, in this case, the direct consequence of a real disparity in bargaining power. We will not enforce the clause as a matter of public policy.

This is a breach of contract action to recover for loss of profits resulting from Southern Bell's failure to publish plaintiff Gas House's advertisement under the proper classification in its Yellow Pages. In December 1973 plaintiff entered into a written contract with Southern Bell for republication of its advertisement in the 1974 Yellow Pages. The contract provided that plaintiff's name would be published under the classification "Gas—Liquified Petroleum—Bottled & Bulk." When the telephone directory was distributed, plaintiff discovered that its

name had been published under the classification "Gas—Industrial & Medical—Cylinder & Bulk." Plaintiff Gas House does not sell industrial and medical gasses. It asserts that its business has been damaged in the amount of $100,000.00 by the misplacement of the advertisement.

The contract entered into between the parties provides:

> "6. The Telephone Company's liability on account of errors in or omissions of such advertising shall in no event exceed the amount of charges for the advertising which was omitted or in which the error occurred in the then current directory issue and such liability shall be discharged by an abatement of the charges for the particular listing or advertisement in which the omission or error occurred."

Southern Bell maintains that, pursuant to the contract, which was "freely entered into by the parties," it can be liable only for the cost of advertising. It states that it is standing ready to refund to plaintiff Gas House, not only for its error in the Yellow Pages but also for any resultant loss to plaintiff, the sum of $4.70.

After the pleadings had been filed, defendant Southern Bell moved for summary judgment. Plaintiff appeals from the granting of the motion by the trial judge and advances two arguments.

Its first argument is that there was a genuine issue of material fact as to whether the limitation of liability was a part of the contract. Plaintiff relies on the "tomato seeds" case, *Gore v. Ball, Inc.*, 279 N.C. 192, 182 S.E. 2d 389 (1971), for the proposition that the clause, which in this case is neither inconspicuous nor ambiguous, was somehow not a part of the contract. A discussion of the "tomato seeds" case is unnecessary. It was decided in accordance with the law of implied warranties peculiar to the sale of goods and developed as a special mechanism for the protection of retail consumers who are not expected to understand the cryptic significance of disclaimers submerged in fine print by which mass merchandisers of consumer products often seek to limit their liability. There is little merit in plaintiff's reliance upon the *Gore* case.

Plaintiff's second argument, that the limitation of liability violates public policy, *is the usual argument made in these cases and the one upon which we choose to focus.* Southern Bell's

response to this oft-litigated argument is that it is not required to provide the Yellow Pages and thus is to be treated as a private party when soliciting and contracting advertisements. Because this is within the domain in which a public utility may freely contract in its private capacity, it may lawfully require those who desire to advertise in the Yellow Pages to agree to a limitation of liability in the event of an error or omission in the Yellow Pages. Furthermore, Southern Bell argues that it has no monopoly on advertising, with the result that its bargaining power, while there may be some disparity, "is no more than may be found generally to exist. . . . " *McTighe v. New England Telephone and Telegraph Co.*, 216 F. 2d 26, 28 (2d Cir. 1954).

We cannot say that it is against the public policy of this State for Southern Bell to limit its liability for negligence in all circumstances. A basic concept of contract law recognizes the propriety of parties' contracting as they see fit, even though it be for limiting their liability. But we do adhere to the principle that contract terms should be reasonable, not unconscionable, to be enforced as a matter of public policy.

In *Allen v. Michigan Bell Telephone Co.*, 18 Mich. App. 632, 171 N.W. 2d 689 (1969), a case supporting an award for the advertiser in this situation, the Court stated:

> "Implicit in the principle of freedom of contract is the concept that at the time of contracting each party has a realistic alternative to acceptance of the terms offered. Where goods and services can only be obtained from one source (or several sources on noncompetitive terms) the choices of one who desires to purchase are limited to acceptance of the terms offered or doing without. Depending on the nature of the goods or services and the purchaser's needs, doing without may or may not be a realistic alternative. Where it is not, one who successfully exacts agreement to an unreasonable term cannot insist on the courts enforcing it on the ground that it was 'freely' entered into, when it was not. He cannot in the name of freedom of contract be heard to insist on enforcement of an unreasonable contract term against one who on any fair appraisal was not free to accept or reject that term." 18 Mich. App. at 637.

In this case it is necessary to look at the relative bargaining power of the parties to determine the reasonableness of the contract clause limiting Southern Bell's liability. Southern

Bell's Yellow Pages directory is the only directory of telephone listing freely distributed to telephone subscribers in the Greensboro area. Although Southern Bell claims that "numerous alternative advertising forums" exist by which plaintiff can reach telephone subscribers, we do not believe this to be the case. No other medium has either the permanency that the Yellow Pages has or the same sense of value to the subscriber. The Yellow Pages, published only annually, is unparalleled as an advertising medium. No other industry in this State save the telephone industry publishes Yellow Pages or anything similar. It is unreasonable to suggest that persons, firms, or corporations should expend large sums of money on newspaper, radio, or television advertisements to mitigate damages for a telephone company's error or omission in a telephone directory.

In this connection we find it interesting that Southern Bell contends that its Yellow Pages is but one form of advertising, in no way unique or monopolistic. We take notice of a case recently decided in this Court in which a wholly antipodal argument is made. In *State of North Carolina Ex Rel Utilities Commission, et al. v. National Merchandising Corporation* (No. 7510UC265; filed 16 July 1975), a manufacturer and distributor of vinyl plastic telephone directory covers (National), upon which advertising space is sold, sued a telephone company to have a tariff prohibiting the use of covers on directories declared unjust and unreasonable. Most telephone companies had similar tariffs, and a general investigation was ordered by the Utilities Commission, which had jurisdiction of the matter. Eventually, a uniform tariff was promulgated by the Commission. On National's appeal to this Court from an adverse ruling of the Commission, the telephone industry in this State (there are twenty-six companies, one of which is the defendant in this case) admits that it has a monopoly on advertising which ought to be protected in the interest of better and less expensive service for the public. Southern Bell's arguments on this point, in that case and in the case at bar, are so protean that they cannot be reconciled.

The parties to this suit are not in positions of equal bargaining power. Southern Bell's Yellow Pages are so important both to subscribers and industry that parties attempting to do business cannot do very well without advertising in them. The clause limiting Southern Bell's liability to the cost of the advertisement is commonly drafted and used by telephone companies in their

Gas House, Inc. v. Telephone Co.

advertising contracts. It is useless to pretend, as the Michigan Court in *Allen* pointed out, that the plaintiff could have bargained for different terms in the contract. It was, like many contracts today, strictly a "take it or leave it" proposition. *Allen v. Michigan Bell Telephone Co., supra* at 640.

Unconscionability does not stem solely from superior bargaining power. In some cases there may be unconscionability even though the parties have about equal bargaining power. To find unconscionability, there must be more:

> "[It] has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Williams v. Walker-Thomas Furniture Co.,* 350 F. 2d 445, 449, 18 A.L.R. 3d 1297, 1301-1302, 2 U.C.C. Rep. Serv. 955, 958 (D.C. Cir. 1965).

Whether there is a meaningful choice can be determined only by consideration of all the circumstances surrounding the transaction. *Id.* at 449, 18 A.L.R. 3d at 1302, 2 U.C.C. Rep. Serv. at 958. We have concluded that in this case plaintiff Gas House had no choice but to accept Southern Bell's limitation of liability.

Where the limitation of liability terms are substantively reasonable, they will be enforced. Nevertheless, parties at an obvious disadvantage in bargaining power who consequently are forced to accept substantively unreasonable terms placing them at the mercy of other parties' negligence generally can find relief in the courts. *See* Prosser, Law of Torts § 68 (4th ed. 1971). Therefore,

> "it is generally held that a contract exempting an employer from all liability for negligence toward his employees is void as against public policy. *The same is true as to the efforts of public utilities to escape liability for negligence in the performance of their duty of public service.* A carrier who transports goods or passengers for hire, or a telegraph company transmitting a message, may not contract away its public responsibility, and this is true although the agreement takes the form of a limitation of recovery to an amount less than the probable damages. It has been held, however, that the contract will be sustained where it represents an honest attempt to fix a value as liquidated damages in advance, and the carrier graduates its rates according to such value, so that full protection would be

open to the plaintiff upon paying a higher rate. The same rules apply to innkeepers and public warehousemen." Prosser, Law of Torts § 67 (3d ed. 1964), *quoted in Allen v. Michigan Bell Telephone Co., supra* at 639 (Emphasis supplied).

We think the contract term limiting Southern Bell's liability to $4.70 is patently unreasonable for the reasons set forth above. Gas House could not do without Yellow Pages advertising and had no other good alternative advertising forum available to it. Under the circumstances the enforcement of the limitations clause would be contrary to public policy.

We are aware that there are arguments for defendant Southern Bell's position. Some argue that a decision like ours will raise telephone rates because telephone companies will pass on their litigation costs to their subscribers. One court has pointed out that there is no opportunity to correct errors or omissions in Yellow Pages (short of the publication of an errata supplement) until the next publication while " 'market place' advertisers can correct or mitigate in the next issue or broadcast." *State Ex Rel Mt. States T. & T. Co. v. District Court,* 160 Mont. 443, 450, 503 P. 2d 526, 530 (1972). That court has also stated that "[t]he same problems attendant to damages exist here and if they could be accurately ascertainable they could conceivably run for a considerable period of time, with no opportunity to mitigate or abate." *Id.* We believe the legal system is not immutable. It is big enough to deal adequately with an ever-growing number of problems. There is no reason to deny a just recovery to an aggrieved party because of fear of unrealized problems.

In reaching the conclusion that the limitation of liability clause cannot be enforced as a matter of public policy, we have relied on the Michigan Appellate Court's decision in the *Allen* case. That decision has been criticized as "a departure from the majority view recognizing freedom to contract . . . based upon faulty notions of the public interest, and . . . not in keeping with commercial realities." *Robinson Ins. & Real Est. Inc. v. Southwestern Bell Tel. Co.,* 366 F. Supp. 307, 310 (W.D. Ark. 1973). We are of the opinion that the principles espoused by this Court and the *Allen* court do not do violence to the freedom of contract. "[T]he tide has turned away from the nineteenth century tendency towards unrestricted freedom of contract." Calamari and

Gas House, Inc. v. Telephone Co.

Perillo, Contracts § 3 (1970), *e.g., Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A. 2d 69, 75 A.L.R. 2d 1 (1960).

Whether plaintiff can successfully establish damages is a matter upon which we do not speculate.

Reversed.

Judge ARNOLD concurs.

Judge PARKER dissenting:

There was here no showing or contention that the error in the listing of plaintiff's name in defendant's Yellow Pages was the result of gross negligence or willful misconduct on the part of defendant. In the absence of such a showing, I see no sound reason why the plain language of the exculpatory clause in the contract entered into between the parties should not be enforced. The majority refuses to do so "as a matter of public policy" because it finds the clause both "unreasonable" and "the direct consequence of a real disparity in bargaining power." Such disparity as here existed does not appear to me to be materially different from that which exists in many other situations. For example, it is not unusual that a local newspaper may become so dominant in its field of coverage that retail merchants in the area must either use its pages on the terms offered by the publisher or forego any effective newspaper advertising of their merchandise. We are not dealing here with a contract provision directly affecting defendant's functions as a public utility, and I see no sound reason why defendant in this case should be treated differently from publishers of other advertising media. Nor do I see why sound public policy dictates that the courts should rewrite the contract entered into by the parties by deleting, on the grounds that it is "unreasonable," a contract provision limiting liability of the publisher for consequences of an innocent mistake. The majority opinion relies heavily upon *Allen v. Michigan Bell Telephone Co.*, 18 Mich. App. 632, 171 N.W. 2d 689 (1969). I find more persuasive the reasoning in such cases as *McTighe v. New England Telephone and Telegraph Co.*, 216 F. 2d 26 (2nd Cir. 1954); *Robinson Ins. & Real Est. Inc. v. Southwestern Bell Tel. Co.*, 366 F. Supp. 307 (W.D. Ark. 1973); and *State ex rel. Mt. States T. & T. Co. v. District Court*, 160 Mont. 443, 503 P. 2d 526 (1972). *See also* Annot., 92 A.L.R. 2d 917 (1963). I vote to affirm.