CORRELL, APPELLANT, *v.* THE OHIO BELL TELEPHONE CO., APPELLEE.

(Decided October 10, 1939.)

*Messrs. Hart, McHenry & Jones,* for appellant.
*Messrs. Burt, Kinnison, Carson & Shadrach,* for appellee.

MONTGOMERY, J. By his petition filed in the Court of Common Pleas the plaintiff sought to recover damages for the breach of a contract. He averred that, an agreement had been entered into between the defendant and the law firm of Messrs. Hart, McHenry & Jones, wherein it was provided, as an incident thereto, that the name, office address and office telephone number of the plaintiff should be listed in the regular white section of the telephone directory to be issued by the defendant. The petition averred the publication and circulation of this telephone directory, but that the name, office address and telephone number of this plaintiff had been negligently omitted from such issue. The claim was that by reason of the aforesaid neglect the plaintiff had suffered great loss of business and had been damaged to the extent of $10,000.

To this petition an answer was filed. The first defense denied the making of the contract pleaded, and denied that the plaintiff had suffered any loss. As a second defense the answer pleaded compliance with the laws of Ohio and the filing with the Public Utilities Commission of Ohio of a general exchange tariff which it was averred was on file at and prior to the time mentioned in plaintiff's petition, and averred that the parties were, and are, governed by the terms thereof. The answer specifically pleads Section 6, paragraph M of this tariff or schedule, which is in the following language:

"The telephone company, except as provided herein, shall not be liable for damage claimed on account of errors in or omissions from its directories nor for the result of the publications of such errors in the directory nor will the telephone company be a party to controversies arising between subscribers or others as a result of listings published in its directories. Claims for damages on account of interruptions to service due to errors or omissions in direct-

ory listings will be limited to a pro rata abatement of the charge for such of the subscribers service as is affected, the maximum abatement not to exceed one-half the service charges for the period from the date of issuance of the directory in which the mistake occurred to the date of issuance of a new directory containing the proper listing.''

A demurrer to this second defense was overruled and, the plaintiff not desiring to plead further, final judgment was rendered against him. From this judgment an appeal was perfected to this court.

It will be seen, therefore, that the plaintiff bases his claim for damages upon a breach of contract and defendant seeks to avoid liability therefor by virtue of a compliance with the laws of Ohio limiting liability.

A public utility is, by law, regulated strictly in its operation. Rights and privileges which it might seek under ordinary contractual relations are curtailed by provisions of the statutes. Its liabilities are likewise regulated and limited by statute. The theory is this that, since it renders a service affecting the public, the state shall regulate and control it in order to prevent injustice, and, further, in consideration of such regulation and control, its liability is and should be defined and limited. In a sense it is a matter of contract, on the one hand by the utility, and on the other by the state representing all its citizens.

Under Section 614-2, General Code, a telephone company is designated as a common carrier, hence, a public utility. Section 614-16, General Code, requires every public utility to print and file with the Public Utilities Commission schedules showing all rates and charges, and all rules and regulations affecting the same. Section 614-18, General Code, prohibits any public utility from extending any rule or regulation, except as specified in the schedule so filed.

This answer avers compliance by The Ohio Bell

Telephone Company with these statutory require-
ments, and avers the specific provision heretofore
quoted, which limits liability for damage in cases such
as the one now before us for consideration.

As heretofore indicated, it is our view that the or-
dinary contractual relations do not apply and that an
action will not lie for damages for an alleged breach
of a contract when such matter is governed and con-
trolled by law. It is true that the plaintiff may have
had no knowledge' of the existence of this schedule,
but certainly one dealing with a public utility, the
functions of which are prescribed by law, must deal
with it with a knowledge of the law in force govern-
ing it and the possibility of its contracting with him.
The law in force governing or affecting such public
utilities, therefore, becomes a part of the contract,
or rather the rights and liabilities under the contract
must be determined with reference to the law in ef-
fect.

Counsel for defendant, with propriety, rely upon
the case of *Western Union Telegraph Co.* v. *Esteve
Bros. & Co.*, 256 U. S., 566, 65 L. Ed., 1094, 41 S. Ct.,
584. That case is directly in point. There the rec-
ord shows the Western Union Telegraph Company
had filed a schedule with the Interstate Commerce
Commission, and its schedule contained a limit upon
its liability similar to the limit placed in the schedule
now before us. In the one case it was a utility gov-
erned by the Interstate Commerce Act, and in the
other a local utility subject to the Public Utilities
Commission of Ohio. The principle involved in the
two cases is identical. As stated by Justice Brandeis
in the course of his opinion appearing upon pages
571 and 572:

"But the rate, long before established, then for-
mally adopted and filed, was thereafter the only law-
ful rate for an unrepeated message, and the limitation

of liability became the lawful condition upon which it was sent. * * *

"The company could no more depart from it than it could depart from the amount charged for the service rendered. * * *

"Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before a matter of contract by which a legal liability could be modified, but as a matter of law by which a uniform liability was imposed. Assent to the terms of the rate was rendered immaterial, because when the rate is used, dissent is without effect."

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

SHERICK, P. J., and LEMERT, J. concur.