212 N.J. Super. 506 (1986)
515 A.2d 814
JOHN TANNOCK, T/A JOHN TANNOCK STUDIOS, PLAINTIFF,
v.
N.J. BELL TELEPHONE CO., DEFENDANT.
Superior Court of New Jersey, Law Division, Camden County.
Decided January 28, 1986.
*509 Michael J. McKenna, for plaintiff.
Charles A. Sweeney, for defendant.
WEINBERG, J.S.C.
Plaintiff, a professional photographer, contracted with defendant to place advertisements in the Burlington and Camden County classified telephone directories. Defendant, New Jersey Bell Telephone Company (hereinafter, "Bell"), published the advertisements. Bell concedes that certain key data in these advertisements was omitted. Plaintiff now seeks partial summary judgment as to liability for defendant's acts and omissions.
Bell asserts as its sole defense that the terms of its directory advertising contract limit recovery to a refund of those charges paid by plaintiff. Defendant also seeks summary judgment. It contends that the limitation of liability clause contained in *510 paragraph five (5) of the "Terms and Conditions of Agreement" is valid and enforceable.[1]
Plaintiff contends that the limitation of liability provision should not be enforced because it was inconspicuous and buried in a standardized form contract, and thus did not constitute an attempt to communicate in an effective manner the liability limitation at the time the agreement was reached. Plaintiff further alleges that the limitation of liability provision was within a contract of adhesion that gave the plaintiff no choice in the matter. He urges the court to utilize the Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960), doctrine to declare this clause unconscionable.
There are no reported decisions in New Jersey on the issue of whether a telephone company may limit liability through a contractual provision of this nature.
The facts in this case are not disputed. On February 2, 1983, plaintiff entered into a directory advertising agreement with New Jersey Bell. The agreement specified that an advertisement comprising one-eighth page in length was to appear for one year commencing in the October 1983 Camden County directory and the November 1983 Burlington County directory, under the heading of Photographers-Portraits. The agreement also called for a bold listing under the heading of Photographers-Aerial, with an extra line indicating "For You Who Desire Something Better."
After the initial agreement was signed on February 2, 1983, plaintiff made several telephone calls to Bell on the dates of June 2, June 7, and June 17, 1983 requesting changes in his *511 advertisement. On July 13, 1983, a Bell salesperson recorded the changes as requested by plaintiff. These changes included the addition of an extra line of information, "F.A.A. Licensed + P.P. of A. Certified," an additional listing of "John Tannock Photography" and display ads anchored to this listing. Thereafter, plaintiff's account was turned over for normal processing and publication in the Camden County and Burlington County directories, as called for in the contract and subsequent amendments.
Even though the substance of plaintiff's advertising was properly submitted with the requested changes, defendant admits that errors occurred during the printing of its publication. The Camden County directory was published with the incorrect extra line inserted, "For You Who Desire Something Better" instead of "F.A.A. licensed + P.P. of A. Certified." In the Burlington County directory, the proper extra line was included but the word "Licensed" was printed as "Licenses."
Defendant argues that it is not unreasonable to require those who desire to advertise in the yellow pages to agree to a limitation of liability in the event of an error or omission. Bell concedes that where it is performing a public service, to wit, telephone communications, it owes a greater duty to the public respecting its negligent acts. However, defendant stresses that the majority of courts in jurisdictions which have addressed the issue of a telephone company attempting to limit its liability in yellow pages advertising, have ruled that the telephone company is acting in a private capacity in forming such contracts. McTighe v. New England Telephone and Telegraph Co., 216 F.2d, 26 (2d Cir., 1954); Georges v. Pacific Telephone and Telegraph Co., 184 F. Supp. 571 (D.C., Ore. 1960).
Under New Jersey law, clauses in private contracts that limit liability are generally sustained. Mayfair Fabrics v. Henley, 48 N.J. 483 (1967) (exculpatory clause in lease that disclaimed landlord's liability for loss to tenant's personal property in event of fire upheld); Midland Carpet Corp. v. Franklin *512 Assoc. Properties, 90 N.J. Super. 42 (App.Div. 1966) (exculpatory clause in commercial lease upheld where evidence reflected a studied attempt to allocate the risks).
The scope and application of an exculpatory clause depends on the particular circumstances. In a given case, factors such as unconscionability and other contract defenses may bear on the enforceability of the exculpatory agreement. Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253 (1982) (exculpatory clause upheld in construction contract where it did not violate public policy). However, it is well settled that such provisions are to be construed strictly against the party relying on the clause. Carbone v. Cortlandt Realty Corp., 58 N.J. 366 (1971) (an exculpatory clause in a commercial lease should not be construed to exculpate a landlord unless the clause expressly so states or the intent to do so is evident from the arrangement of the parties); Kuzmiak v. Brookchester, 33 N.J. Super. 575 (App.Div. 1955) (exculpatory clause in a residential lease that attempted to immunize landlord from liability for any wrongdoing held invalid).
In the landmark Henningsen decision, supra, our Supreme Court ruled that an automobile manufacturer could not evade liability for an implied warranty of merchantability through a disclaimer not fairly obtained. In noting the gross inequality of bargaining power and the location of this clause on the reverse side of a purchase order, the court found that it was an appropriate inference to conclude that the manufacturer and dealer were not attempting to effectively communicate the warranty limitation clause to the purchaser. Henningsen, supra 32 N.J. at 399-400.
In Tessler and Son, Inc. v. Sonitrol Security Systems of Northern N.J. Inc., 203 N.J. Super. 477 (App.Div. 1985), the Appellate Division recently upheld a liquidated damages clause that limited liability for negligence. There, defendant had contracted to monitor plaintiff's property with a burglar alarm system. Defendant's employee failed to detect a break-in because *513 she had turned down the volume on the listening equipment to avoid hearing sounds she considered non-hostile. The contract between the parties provided that if defendant is found liable for loss due to the failure of its services, even if due to defendant's negligence, liability shall be limited to $250 dollars.
The plaintiff argued that the clause was invalid because any potential liability was limited to an amount much less than the actual contract price. The court characterized the clause as "exculpatory" in nature but upheld it as reasonable in light of the circumstances. However, in its discussion the court enunciated this well-grounded principle:
Exculpatory clauses like this one are valid where they do not adversely affect the public interest, where the exculpated party is not under a public duty to perform (as in the case of a public utility or common carrier) and where the contract does not grow out of unequal bargaining power or is otherwise unconscionable. [203 N.J. Super. at 82-83.]
This is a case of first impression in New Jersey in the context of a telephone company limiting its liability through an exculpatory-type clause. This court believes that the better-reasoned approach utilizes a two-pronged analysis to determine unconscionability:
1. Determining the relative bargaining power of the parties, i.e., whether the parties could actually negotiate regarding the limitation of liability provision.
2. Whether the challenged provision is substantively unreasonable. Allen v. Michigan Bell Telephone Co., 18 Mich. App. 632, 171 N.W.2d 689 (Ct.App.Mich. 1969); see also Williams v. Walker-Thomas Furniture Co., 350 F.2d 445 (D.C. Cir.1965).
The plaintiff and defendant telephone company are not in positions of equal bargaining power. It is not disputed that the contract signed by the parties was a form prepared by the defendant and used by the defendant in all subscriptions for advertising in its yellow pages. In addition, defendant does not argue that this clause was subject to deletion or modification if the subscriber so desired. There is no indication that this clause was even discussed by the parties. In fact, the salesperson *514 who presented this contract to the buyer was without authority to alter it. As in Henningsen, the salesperson's function was merely "ministerial" in this regard, since his only duty was to secure the subscriber's signature on the dotted line. Henningsen, supra, 32 N.J. at 390. This was clearly part of a "take or leave it" offer by the defendant  an example of a contract of adhesion.
As a practical matter, this court has observed that the print size in question is approximately one-sixteenth of an inch high and very light in color, providing a poor contrast to the off-white color of the paper on which it is printed. On the reverse side of this one-page contract, submitted as an exhibit by plaintiff, there are a total of 21 paragraphs averaging 25 words per line for a total of 65 lines of copy. This page is titled "TERMS AND CONDITIONS OF AGREEMENT." All of this print is contained in an area that measures six inches by seven inches. Taken as a whole, the contract Bell presents to its subscribers discourages the actual reading of it. The print is too small to be read by an average person without the aid of a magnifying glass.
The limitation of liability clause is placed roughly one-third of the length down the page. It is not under a separate heading, underlined, or highlighted in any manner. It is, in fact, inconspicuous[2]. Given the undisputed facts of this case, plaintiff cannot be considered to have been on notice as a *515 matter of law to this provision at the time the parties reached their agreement.
In Mayfair Fabrics v. Henley, supra, our Supreme Court upheld an exculpatory clause in a lease agreement, but the court also noted that this provision was contained in a typewritten rider attached to the printed form of the lease, 48 N.J. at 485. This constitutes an effective communication of the clause and is thus distinguished from the case at bar. A typewritten rider on a form contract calls attention to itself as it stands out from the remainder of the contract. By contrast, the limitation of liability provision in Bell's contract is so located as to easily escape attention. Therefore, this court finds that the first prong of the Allen court's test for unconscionability has been satisfied.
It is also the opinion of this court that the provision is substantively unreasonable. The defendant attempts to relieve itself from all liability for its negligence, except for a return of the contract price. While it is clear generally that parties to a contract are free to negotiate into the contract who shall bear the risk for various contingencies that might arise, the facts of this case indicate that enforcement of the challenged provision would be unfair. There is no question that the telephone company enjoyed a superior bargaining position to that of the plaintiff. Plaintiff had no opportunity to negotiate with defendant regarding this provision. Since this clause shifts substantially what a reasonable subscriber would expect to be the risk-bearing obligations of the parties, it would be unconscionable to require the plaintiff to be bound by it.
Defendant contends that the clause should be upheld for what it terms a number of public policy reasons. First, Bell states that the limitation allows it to charge relatively low rates for advertising in the yellow pages. Gas House Inc. v. Southern Bell Telephone, 289 N.C. 175, 221 S.E.2d 499, at 505 (1976). This reasoning is unpersuasive as the telephone company could spread the risk of its negligence among all its advertisers. It is *516 unfair that the harm suffered by one advertiser  which in some cases could be irreparable  should be subordinated to a blanket limitation of liability clause in order that defendant may decrease the cost to the general class of its advertisers.
Bell further contends that it is impossible to print the great number of ads it undertakes without an occasional mistake. In Hamilton Employment Service Inc. v. New York Telephone Co., 253 N.Y. 468, 171 N.E. 710 (1930), the defendant telephone company incorrectly printed the plaintiff's business telephone number in the yellow pages directory. The Court of Appeals upheld the clause in part because "in the crowding and rush" of preparing a volume containing hundreds of thousand of names and numbers, complete freedom from error is practically impossible. Defendant believes this court should adopt the same rationale. Our society has recognized that it is practically impossible for automobiles to drive the roads without some errors; therefore, we have devised methods of cost allocation formulated to accommodate these errors. A similar recognition regarding defendant's activities is also appropriate.
Bell also argues that damages in this case would be purely speculative and cites Gas House Inc. v. Southern Bell Telephone, supra, 221 S.E.2d at 505 to support this proposition. This issue is not a consideration in deciding these motions for summary judgment. Plaintiff's burden of satisfying the finder of fact regarding damages will not be modified by this decision.
Lastly, defendant notes that there are other media available for advertising and thus plaintiff is not compelled to utilize defendant's services. While at least one court has stated that classified advertising in the yellow pages is in no way unique or monopolistic, Robinson Insurance and Real Estate Inc. v. Southwestern Bell Telephone Co., 366 F. Supp. 307 (W.D.Ark. 1973), it is more likely that just the opposite is true. It is common knowledge that defendant's yellow pages is the only directory of classified telephone listings freely distributed to all the telephone subscribers in the Burlington and Camden *517 County areas. It is a likely place to advertise services such as those of a vendor specializing in aerial photography. Even more important, it is where plaintiff's customers would be expected to initially look when they needed the service offered by plaintiff.
Defendant further urges this Court to uphold the limitation of liability provisions for reasons set forth in the following cases: McTighe v. New England Tel. & Tel. Co., 216 F.2d 26 (2nd Cir.1954); Cole v. Pacific Tel. & Tel. Co. 112 Cal. App.2d 416, 246 P.2d 686 (Cal. App. 1952); Correll v. Ohio Bell Telephone Co., 63 Ohio App. 491, 27 N.E.2d 173 (Ohio App. 1939). In these cases, the advertising rates and contracts had to be filed and approved by the Board of Public Utilities or some other regulatory agency. The Cole and Correll courts both noted that if an advertiser desired to question the reasonableness of the telephone company's contractual provision limiting liability, the proper avenue of redress would be before the administrative agency that regulates the rates. Cole, supra, 246 P.2d at 688; Correll, supra 27 N.E.2d at 174. These two cases are distinguishable from the case at bar because there is no regulatory agency that governs the rates charged by defendant in its capacity of selling, printing, or distributing the advertising that is generally referred to as the yellow pages. In the McTighe case, a regulatory agency governed the rates charged for the white pages, but not for the yellow pages. However, as the court in Allen v. Michigan Bell Telephone Co., supra, observed, it was apparent that the unequal bargaining power argument was not fully considered in McTighe. Allen v. Michigan Bell, supra, 171 N.W.2d at 691. In Allen, the court refused to enforce virtually the same clause under challenge here because the clause was contrary to public policy. In that case, there was no regulation of classified advertising in the yellow pages by any governmental agency. The reasoning in Allen is persuasive and consonant with the policy of the Henningsen decision and its progeny.
*518 For the above reasons, this court finds that the defendant cannot limit its liability in the manner it has attempted in the case at bar. Plaintiff's motion for partial summary judgment is granted. Defendant's cross-motion for summary judgment is denied. A trial regarding the issue of damages will be scheduled.
NOTES
[1] Paragraph 5 in pertinent part states: "The sole and exclusive liability of the telephone company and the party listed in the space marked `make payment to': for errors, deviations or omissions, in whole or in part, in connection with any advertisement or listing covered by this agreement shall be limited to a refund of charges already paid on the advertisement or listing in question for the issue(s) in which the errors, deviations or omissions occur. Upon making said refund as described above, no other or further liability shall exist."
[2] Plaintiff notes that the New Jersey Legislature addressed the issue of small print and exculpatory clauses in a different but analagous context. If the seller of goods is to effectively disclaim his warranty liability, such disclaimer must be conspicuous. See N.J.S.A. 12A:2-316(2). "Conspicuous" is explained in N.J.S.A. 12A:1-201(10): "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals ... is conspicuous. Language in the body of a form is conspicuous if it is in larger or other contrasting type or color." Although these statutes are not controlling in the case sub judice, the language contained therein provides a useful tool to examine the limitation of liability clause with which this court is concerned.